## CREAMER v. BOWERS et al.[1]

*(Circuit Court, D. Delaware. May 24, 1888.)*

1. PATENTS FOR INVENTIONS—DAMAGES FOR INFRINGEMENT.

Where the defendants had at first bought large numbers of a patented article from the complainant, and afterwards, while manufacturing it themselves, as wanton infringers, did not wholly cease buying it from him, it is a reasonable conclusion, sufficiently free from doubt, that, had they not infringed, they would have purchased from him as many of the patented articles as they themselves made and used.

2. SAME—DEMAND OF COMPLAINANT.

A suit was brought upon two patented devices, capable of conjoint use. A decree for an account was rendered, and the complainant offered in his testimony to accept one dollar for each use of the two devices. The decree was amended so as to exclude the profits and damages arising from one of them. *Held*, that the plaintiff, not having been shown to have had in view any compromise, is not entitled to recover more than he claimed or assented to as the measure of his loss.

3. SAME—PERIOD OF INFRINGEMENT.

Where the complainant has limited the period within which he claims that infringements were made, the accounting must not include a later time.

[1] Reported by Marks Wilks Collet, Esq., of the Philadelphia bar.

4. SAME—ACCOUNTING—WAIVER OF EXCEPTIONS.

    Where wanton infringers, able to show the exact number of infringing articles made and used by them, left the complainant to make out his case as best he could, and the master ascertained the number thus made as accurately as practicable under the circumstances, the report will not be disturbed.

In Equity. Exceptions to master's report.

*Frost & Coe*, for plaintiff.

*W. C. Spruance* and *Chas. M. Curtis*, for defendants.

WALES, J. By an interlocutory decree of this court, made on the 21st of November, 1883, the defendants were enjoined from infringing letters patent No. 89,974, dated May 11, 1869, issued to the complainant for " a new and improved mode of constructing ventilating and hot-air registers," for the side of a railroad car, with an order of reference for an accounting of profits and damages. The complainant was a manufacturer and seller of supplies for railways. The defendants were manufacturers of railroad cars, and in the year 1872 became customers of the complainant, and bought a large number of patented registers from him, and continued to make such purchases down to the close of the year 1878. During this period the defendants were also wanton infringers of the complainant's patent, making and using registers similar in all respects to his invention, and supplying railroads with the infringing articles. The complainant charged no royalty or license fee, but maintained a close monopoly of his patent, and supplied the whole market himself. The defendants sold each car manufactured by them, and which was equipped with the infringing registers, as a whole, and without reference to the cost or price of such registers. The master has now reported the number of registers so made and sold by the defendants to have been 853, and, allowing $2 as the loss incurred by the complainant on each register, has assessed his damages at $1,706, with interest from the date of the decree. The defendants have filed 27 exceptions, many of which are repetitions, and only a few of them require consideration.

It is insisted that the master should have reported no more than nominal damages. The rule for estimating damages sustained by a patentee, by an infringement, varies according to the mode in which he uses his patent. Where he has fixed a royalty or license fee for the making, using, or selling the patented article, the amount of such fee or royalty will be the measure of his loss, and his damages can be readily ascertained by multiplying that amount by the number of infringing articles; but if he maintains a close monopoly, and is ready and able to furnish the whole market with the patented articles, he must prove by satisfactory evidence the advantages gained by the infringer in the unlawful use of the patent, over and above the advantages which he could have derived from the use of similar articles, unpatented and open to the use of the public; or must prove the loss or falling off of his own sales in consequence of the infringement, or a loss by the compulsory reduction of prices made necessary by the competition of the infringer. The rule varies with the special circumstances of the particular case. *Livingstone* v. *Woodworth*, 15 How.

546; *Seymour* v. *McCormick*, 16 How. 480; *Mayor* v. *Ransom*, 23 How. 487; *Mowry* v. *Whitney*, 14 Wall. 620; *Philp* v. *Nock*, 17 Wall. 460; *Birdsall* v. *Coolidge*, 93 U. S. 64; *Cawood Patent*, 94 U. S. 695; *Blake* v. *Robertson*, Id. 728; *Garretson* v. *Clark*, 111 U. S. 120, 4 Sup. Ct. Rep. 291; *Black* v. *Thorne*, 111 U. S. 122, 4 Sup. Ct. Rep. 326; *Dobson* v. *Carpet Co.*, 114 U. S. 439, 5 Sup. Ct. Rep. 945. It is objected that the complainant's patent was for an improvement only, and that no evidence was offered before the master to distinguish the value of that improvement, or the profits and advantages which could be gained by its use, over the other unpatented parts which belonged to the register. If this were true, the complainant could not recover more than nominal damages. A majority of the cases just cited afford illustrations of the impossibility of assessing damages where the patent was for a particular feature, and no evidence had been furnished to prove the value of that feature separately from the value of the other parts of the machine or article to which it belongs. In *Dobson* v. *Carpet Co.*, the patent was merely a design for a carpet, and the advantage due to the design could not be separated from the carpet as a whole, and consequently there could be no recovery. But the present case is not included in this class. Here the patent was for the register as a complete article, and not for any part of it exclusively. The description of the complainant's patent does not give prominence to any one portion of the register, and the claim is as broad as the description. It is further objected that there was no satisfactory proof that, if the defendants had not infringed, they would have purchased from the complainant patented registers equal in number to the infringing registers made and used by them. That the defendants would have made such purchases is a reasonable conclusion from the evidence. It is certain that they made large purchases at first, and that they did not, during the time they were infringing, wholly cease buying from the complainant, and their conduct convinced the master that in all probability they would have continued to buy at the same rate as formerly if they had not infringed. This cannot be considered as a conjectural or speculative inference from the facts proved. It is true, there may be a possible doubt on the subject, but in cases of wanton infringement every doubt and difficulty should be resolved against the infringer. *Rubber Co.* v. *Goodyear*, 9 Wall. 803. All that is necessary in order to prove actual damages is to furnish some reasonable basis or *data* on which to calculate them, and whenever the evidence is sufficiently definite to show the pecuniary loss suffered by the complainant, he is entitled to be reimbursed, no matter whether the infringer gained anything by the infringement or not. Walk. Pat. § 565; *Seymour* v. *McCormick*, 16 How. 480; *New York* v. *Ransom*, 23 How. 487; *Truck Co.* v. *Railroad Co.*, 2 Fed. Rep. 681; *Zane* v. *Peck*, 13 Fed. Rep. 475; *Hall* v. *Stern*, 20 Fed. Rep. 788; *Hobbie* v. *Smith*, 27 Fed. Rep. 662; *Royer* v. *Coupe*, 29 Fed. Rep. 358; *Lock Co.* v. *Sargent*, 117 U. S. 552, 6 Sup. Ct. Rep. 934; *Roemer* v. *Simon*, 31 Fed. Rep. 41. The allowance by the master of two dollars to the complainant on each infringing register made and used by the defendants is excessive, and must be reduced one-half. The bill as origi-

nally filed included a suit for the infringement of the complainant's patented "ventilator," which was used either in conjunction with or separately from the register. After the evidence had been closed it was discovered that the ventilator patent had expired prior to the filing of the bill, and on petition by the defendants the decree was modified for the purpose of excluding from the accounting any proof of profits or damages arising out of the infringement of the last-named patent. 30 Fed. Rep. 185.

Prior to the reformation of the decree the complainant, in the course of his testimony, had stated the cost and selling prices of the ventilators and registers, respectively, showing a very large profit on each above the manufacturer's profit, at the same time expressing his willingness to accept, in compensation for his loss by the infringements of the defendants, one dollar for each infringing ventilator and register made and used by them. The master appears to have been of the opinion that this offer was made by way of a compromise, and that, damages for infringing the ventilator patent having been subsequently eliminated from the accounting by the decree of the court, the complainant was justly entitled to the full amount of such damages as were proved to have been sustained by the infringement of the register patent only. The record does not show that the complainant had in view any compromise of his rights when testifying before the master, and on the proof he is not entitled to recover more than he claimed or assented to as the measure of his loss. Exception is taken to the number of infringing registers reported by the master, because evidence as to such number was received up to the time of the accounting, and after the end of the year 1878, when, it is admitted, the infringements had ceased. It is true that an account of profits is not confined to those which accrued before the suit was begun or before the interlocutory decree was entered, but may be made to include all profits realized by the infringer at any time prior to the closing of the account. Walk. Pat. § 714; *Rubber Co.* v. *Goodyear, supra.* But the complainant in this case having limited the period within which he claims the infringements were made, the master ought not to have extended the accounting to a later time. Objection that the master gave too much weight to the testimony of one of the principal witnesses for the complainant is founded on the fact that an important statement made by this witness was manifestly untrue. The witness said that he had derived his knowledge of the number of cars which were provided with the infringing registers from an examination of the defendants' books, while the record shows that the books contained no entries which could possibly afford any information on the subject. This part of the record is fairly open to comment, but it does not appear that the master relied entirely, or for the most part, on the evidence of this witness, who was, moreover, corroborated by other evidence. The testimony is very voluminous. The defendants were intentional and deliberate infringers, and they left the complainant to make out his case as best he might, when it was in their power to exhibit to the master the exact number of infringing registers made and used by them, and the master has per-

formed this difficult task with as near an approach to accuracy as can be looked for under the circumstances. The last exception to be noticed is to the allowance of interest. The general rule is that interest should be allowed on royalties from the time those royalties ought to have been paid, in all cases where a royalty is the measure of the complainant's damages, the theory in such cases being that damages are liquidated at such time as the royalty would have been due, if the defendant had elected to purchase instead of to infringe the right to the use of the invention in suit, but that no interest is due on damages measured otherwise than by a royalty, because such damages are unliquidated until they are ascertained by an action. Walk. Pat. § 571; *Truck Co.* v. *Railroad Co.*, supra; *Mowry* v. *Whitney*, 14 Wall. 653. But the latter part of this rule is subject to exceptions, and in equity the allowance of interest appears to have been left largely to the discretion of the court. On reason, it is difficult to conceive why, where a patentee's loss is ascertained to have been incurred at a certain time, interest should not begin to run from that time, whether the loss was measured by a royalty or by other equally conclusive evidence of the fact. The verdict of a jury must include interest up to the day of its rendition; but a master, although restricted in his finding to actual damages, has frequently been allowed to fix the date from which interest shall be computed on the amount. The authorities on this question are not uniform, and the rule cannot be said to be definitely settled. So far the decisions have been made with reference to the merits of the particular case, and on consideration I have concluded to allow interest from the date of the interlocutory decree on such damages as shall be finally awarded to the complainant.

By closing the accounting at the end of the year 1878, and deducting from the number of infringing registers found by the master the number of them made after that year, and also those not affirmatively proved to have been made before that time, the remainder will be 555. A decree will therefore be entered for the complainant for $555, with interest from the 21st of November, 1883; making the total amount of principal and interest $705.13, with costs.