ROSE v. HIRSH et al.

(Circuit Court of Appeals, Third Circuit. May 4, 1899.)

No. 26, March Term.

1. PATENTS—INFRINGEMENT—MEASURE OF DAMAGES.

Where the patentee himself manufactures the patented article, and maintains a close monopoly, so that one desiring to use it could purchase it only from him, it is proper, in case of wanton infringement, to conclude that but for the infringement the infringer would have purchased the articles from the patentee, and consequently that the latter is entitled to all damages resulting from the loss of such sales.

2. SAME—WANTON INFRINGEMENTS.

In cases of wanton infringement, any doubt arising in respect to the sufficiency of the evidence to warrant a finding of the amount of damages is to be resolved against the infringer.

3. SAME—COMPUTATION OF DAMAGES.

In a case of wanton infringement, where it appeared that defendant had made and used a certain number of the infringing articles, and that the business of manufacturing the patented article as carried on by the patentee was one in which the expenses of manufacture could be readily computed, *held*, that he was entitled to recover the difference between the cost of manufacture, as shown by his evidence, and his established selling price, in the absence of any evidence contradicting his figures; especially when, if successful contradiction were possible, it lay within defendant's power to furnish the evidence.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Henry E. Everding, for appellant.
Wm. C. Strawbridge, for appellees.

Before ACHESON, Circuit Judge, and KIRKPATRICK and BUFFINGTON, District Judges.

BUFFINGTON, District Judge. This is an appeal from a decree entered by the circuit court of the Eastern district of Pennsylvania, dismissing exceptions to and confirming the report of a master. 91 Fed. 149. After entry by that court of a decree adjudging appellees to have infringed the first claim of patent No. 504,944, granted to John Rose, the appellant, a master was appointed to state an account of the gains and profits which the appellees received, and the damages sustained by the appellant by reason of said infringement. The master found that the appellees had used a considerable quantity of rods containing the patented device, as to which he reported: "The complainant evidently has been damaged by the defendants' use of the infringing rods, but the evidence presents no definite basis on which such damages can be assessed." He therefore reported but nominal damages, and ordered appellant to pay the costs of the accounting. To this report appellant excepted. On hearing, the exceptions were dismissed, the report confirmed, and a decree entered in conformity with the master's recommendations. The entry of said decree is here assigned for error.

The proofs show that the patented article was a completed umbrella stick. Appellees' bookkeeper testified that they had used 121 gross of such infringing rods. It is also shown that prior to November, 1894, the patented rod could not be purchased, except from appellant, who alone made them, and who maintained a close monopoly of their manufacture, and that appellees purchased such rods from him, and thus acquiesced in the monopoly of his patent from 1891 to June 20, 1894. At the latter date they ceased buying from appellant, and thereafter deliberately infringed his patent, until enjoined in this case. During the last five months they purchased, viz. from January 23 to June 20, 1894, they bought from Rose 123 gross at prices ranging from $24 to $28. Analysis of these bills shows that for said period the price was substantially $24 per gross; for of 19

different invoices 15 were at $24, and these covered 118 gross, while the two at $26 and $28, respectively, aggregated but 4½ gross. There was no evidence that Rose, prior to November, 1894, sold to any one at a less price than $24 per gross. In November, 1894, appellees began purchasing from Riehl, who was theretofore connected with appellant's business, and from him and other infringing makers, down to November, 1896, when they were enjoined, bought and used 121 gross of the infringing rods. During this time appellees were contesting the validity of Rose's patent in the present case. That the appellees regarded the rods as desirable is shown by their continuous purchase and use of them, through infringing makers, up to the time they were enjoined. Under these facts and conditions,—the appellant manufacturing rods, and maintaining, until the appellees began infringing, a close monopoly, and the appellees, who were users, having for more than three years purchased all their Rose patent rods from him alone, and having thereafter continued to use rods containing the patented device in their business,—it is reasonable to conclude that, if the appellees had not deliberately and wantonly become infringers, and wrongfully trespassed on appellant's patent rights, they would have purchased from appellant the rods they used. Moreover, the law is that in cases of wanton infringement every doubt is to be resolved against the infringer. Rubber Co. v. Goodyear, 9 Wall. 803. These facts unite to afford substantial, not mere conjectural, grounds on which to base the conclusion that the appellant, by appellees' wrongful acts, lost the sale of these particular rods, and to that extent assuredly was damaged. Creamer v. Bowers, 35 Fed. 209; Covert v. Sargent, 38 Fed. 237.

The appellees having, then, in fact wrongfully deprived the appellant of the sale of 121 gross of the patented article, the patentee has a right to be reimbursed for all damages resulting therefrom. While finding such was the appellant's right, the master, as we have seen, thought the evidence presented no definite basis on which damages could be assessed. When the facts and circumstances attending this case are considered, it seems to us the master was in this regard in error. The proofs show that the appellant carried on his business in a small way. He was in rented premises. The value of his plant did not exceed $300. He was an assembler of parts made by others, rather than a manufacturer himself. He had no salesmen, carried no insurance, had no clerical help, and sold, packed, and delivered his finished product himself. His customers were few and solvent. His operations, being simple, afforded a comparatively easy basis for determining operative cost. Moreover, the bulk of the work and all of the stock were done or furnished by other manufacturers at fixed prices. For these items he produced bills, the accuracy of which is not questioned. In this way alone he accounted for $10.01 of the total manufacturing price of $10.37, to which he testified. These items were: Tubing, $7.63; enameling, $2.16; and springs, 22 cents per gross. The remaining ones were 18 cents for labor, and a like sum for running expenses. This last item, he testified, was a due proportion of his rent and other general expenses, which, as we have seen, were of an unusually simple character. The proofs show that the labor

was done by some three boys, who, while they worked by the day, were able to turn out a known amount per diem. The appellant testified that no labor book was kept, and there was therefore no failure on his part to produce any evidence bearing on the cost of labor within his power. It would therefore seem that the figures fixing these two items, to which alone any possible element of uncertainty could attach, were under the proofs reasonably certain; nor was their correctness qualified by cross-examination. But the appellant's affirmative proof on this question does not stand alone. The correctness of the figures testified to by him is strengthened and substantially corroborated by the admitted business operations of the appellees, as well as by their omission to use means without their power to contradict them, if, indeed, successful contradiction was possible. If the cost of his manufacturing operations was falsely understated by Rose, the appellees had it in their power to have contradicted him by Riehl, who had been connected with Rose in his business, who was cognizant of the cost of Rose's manufacturing, as well as of his own subsequent independent work. As a conjoint infringer with Hirsh, he was presumably hostile to Rose. Not only did they fail to call him, but they failed to call other manufacturing infringers whose output they bought, who certainly knew the actual cost of making similar rods. The fact that appellees bought like rods from those manufacturers at $7 and $8 per gross affords convincing corroboration that the cost of $10.37, testified to by Rose, was correct.

The facts we have stated being in evidence, the master was fully justified in finding, as we do, and especially so in the absence of all counter proof by the appellees, that the appellant, by the appellees' wrongful impairment of his sales, was damaged to the extent of the difference between the cost price of $10.37 and the selling price established as between these parties, viz. $24. This, on the 121 gross wrongfully used, was $1,649.23. On this sum interest should be allowed from May 31, 1898,—the date of the filing of the master's report. Tilghman v. Proctor, 125 U. S. 161, 8 Sup. Ct. 894. It is therefore ordered that the decree of the court below be reversed, and the record remanded, with directions to enter a decree in favor of the appellant, together with interest from May 31, 1898, and costs on the bill, accounting, and this appeal.