PRESSED PRISM GLASS CO. v. CONTINUOUS GLASS PRISM CO.

(Circuit Court, W. D. Pennsylvania. August 27, 1910.)

No. 14, November Term, 1904.

1. PATENTS (§ 318*)—INFRINGEMENT—ACCOUNTING FOR PROFITS—PROCESS PATENT.

On an accounting for infringement of patents for a process of making prism plate glass and a machine for practicing such process, the measure of defendant's liability for profits is the saving or advantage secured by the use of the infringing process and machines. To ascertain such saving

comparison is to be made with other processes open to defendant which were capable of producing an article of similar character and value if there were such, the measure of liability being the saving in the cost of manufacture by the use of the infringing process, and the amount depending on the quantity made which was fit for market, without regard to what was actually done with it. If there was no other process open to defendant's use which would produce an article of equal value in the market, the difference in the market value of the article as made by the patented process and that made by that nearest in character may be considered, and may be taken as the measure of liability, where the cost of manufacture by the two processes is substantially the same.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 577–586; Dec. Dig. § 318.*

Accounting by infringer for profits, see note to Brickill v. City of New York, 50 C. C. A. 8.]

2. PATENTS (§ 318*)—INFRINGEMENT—DAMAGES RECOVERABLE.

Where complainant, which was the owner of the Ripley & Wadsworth patents, Nos. 661,025 and 661,024, for a process of making pressed prism plate glass and a machine for practicing such process, and defendant, which was an infringer of such patents, were the only parties engaged in the manufacture of such glass, and in direct competition for the trade, and complainant was fully equipped to supply all the trade there was, on an accounting for the infringement, complainant is entitled to recover as damages the amount of profits it would have made on the quantity of such glass sold by defendant, estimated at the prices it would have received but for the infringing competition, and also the amount it lost on its own sales by reason of the low prices forced by defendant.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 577–586; Dec. Dig. § 318.*]

In Equity. Suit by the Pressed Prism Glass Company against the Continuous Glass Prism Company. For opinion sustaining the patents and finding infringement, see 150 Fed. 355. On exceptions to report of H. D. Gamble, master. Exceptions sustained and account stated.

Charles Neave, for complainants.
Augustus B. Stoughton, for defendants.

ARCHBALD, District Judge.† The result of this litigation is certainly anomalous. After having diligently practiced the patented process for upwards of three years, and contested its validity through the various steps of a protracted and expensive lawsuit, persisting in the infringement, after a decision had been rendered, up to the very day that the decree was signed, it now turns out, according to the report of the master, that the defendants were in no way benefited thereby, and this, by the peculiar logic, that the process was so superior to anything in the prior art as to have out-distanced all others, producing a new kind of prism plate commercially, if not theoretically, and leaving nothing in the art on which to base a comparison of advantages. It is even found that in some respects the process was a detriment; one-third of the quantity produced having been ultimately consigned to the cullet heap. There would seem to be something out of the way in the reasoning to reach these conclusions.

The patents infringed being for a machine and a method (the product patent not having been sustained), the advantage or saving to the

defendants is the measure in the first instance of that for which they are liable; and this, of course, depends on the quantity which they made. From May 1, 1904, to February 7, 1907, which covers the period of infringement, the defendants admittedly produced 90,308 square feet of pressed prism plate glass by the use of the patented process; 48,682 plain, and 41,626 re-enforced with wire. Of this 57,591 was sold, and 2,088 was in stock at the time of the hearing, the balance, 30,629, having been broken up, according to the defendants, and thrown on the cullet heap. If that which was thus thrown away was defective, and was discarded because it was of no commercial value at the time it was produced, the defendants are not to be held for it. The saving or advantage by the use of the process amounted to nothing save only as it produced a commercial article. But, on the other hand, if that was true of it at the time it was produced, it is of no consequence whether the defendants sold it or retained it in stock, as appears to have been the case, until it was superseded by something better, brought about by experience and improved practice. The saving or advantage is to be judged by the results when the process was complete, and as to glass which was then fit for the market, no matter what happened to it afterwards. And that this was true of the whole ·quantity named there can be no question. Mr. Harris, the secretary and treasurer of the defendant company, testifies that it represented glass that was cut off at the end of the lehr, and put in stock as salable glass; and Mr. Kerr, the superintendent, states that the difference between the glass sold or in stock and the total product represented glass that was considered sufficiently good for sale at the time it was manufactured, but that, as they improved in their work, it was broken up because it did not come up to the standard. But it is not what the defendants disposed of, but what they produced that is to be considered in this part of the accounting. Infringement was complete, when the process was used, and advantage was derived from it to the extent that it was successful, which is not affected by the disposition that was made of the product afterwards. The defendants are liable therefore for the full 90,308 square feet of salable glass manufactured, regardless of what they happened to do with it.

In order to determine the amount of money saved in the production of this quantity of glass by using the patented process, comparison is to be made with others which were open to the defendants. In passing upon the validity of the patent, two other processes were principally considered, one for the molding of prism tiles, according to the Heidt patent, and the other for the rolling of prism plate, according to the Cummings. As to the one of these it was found that, while the prisms were of fairly sharp outline, the tiles were necessarily of limited size, and, a number of them having to be assembled together and set in a metal frame to make up a skylight or window, not only did this add to the expense, but it detracted seriously from their commercial acceptance and efficiency. And, as to the other, it was pointed out that there was a difficulty in securing sharpness and accuracy of prisms, and that, having to be made thin, the plate could not be polished, and had thus to be put on the market in a comparatively imperfect condition. The process of the patent in suit by comparison over-

came these objections, turning out a superior character of glass, with sharply outlined prisms, in large sheets, without lateral or structural strain, and able to be properly annealed and polished. The same two processes are brought forward in this accounting, but are differently relied on. According to the complainants, the saving in cost over the manufacture of prism tiles furnishes the criterion by which the advantage to the defendants of the use of the patented process is to be determined, which is no doubt considerable. But, according to the defendants, rolled prism plate, made after the Cummings patent, is the one to be taken, this process being open to them, having been declared in Daylight Manufacturing Company v. American Prismatic Light Company, 142 Fed. 454, 73 C. C. A. 570, to be invalid; judged by which there was no saving in cost of production, pressed prism plate and rolled prism plate in this respect being equal. But the method which is taken for comparison in any such case must not only be open to the public, but also must be capable of equally satisfactory results. Mowry v. Whitney, 14 Wall. 620, 20 L. Ed. 860; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 199, 39 L. Ed. 263. And it must therefore in the case in hand have been adequate to produce glass of similar character and value. Novelty Glass Works v. Brookfield, 170 Fed. 946, 95 C. C. A. 516. But with regard to prism tiles, while structurally of the same quality as pressed prism plate, having the same clear and sharply cut angles, they have other disadvantages, by reason of which they cannot be considered as in the same category. It is true that it was these, rather than rolled prism plate, that pressed prism plate came in competition with and displaced. But, having to be assembled and framed, prism tiles are not like the clear and unobstructed sheets of pressed prism plate, and do not therefore come up to the standard required as the basis for comparison. The same is true also with regard to rolled prism plate, which is the other alternative. The decision adverse to this process was not made until December 11, 1905, and before that it could not be used without the danger of a lawsuit. But assuming that it was open for the whole period of infringement, and conceding that, in a general way, rolled prism plate is of the same character as pressed prism, there can be no question that the quality is inferior, for which, if nothing more, there is the market price of it, and it is not therefore to be brought into comparison with pressed prism plate in cost of production, which at present concerns us, any more than prism tiles are. Both these processes being thus found unavailable, it is not necessary to go into the vexed question of what it cost the defendants to produce pressed prism plate, although, if it were material, the figures of Mr. Wadsworth would have to be taken, his testimony being most convincing, amounting to a demonstration, where that of the defendants' witnesses is very unsatisfactory, not to say inconsistent and contradictory.

But the rejection of these processes, as a basis for determining the saving to the defendants by the use of the patented process, does not leave the complainants without remedy. The superiority of product, as shown by the price obtained, is equally a measure of the advantage secured by it. Rolled prism plate, as we have seen, is the nearest in

character; but pressed prism plate was worth a great deal more, and the difference in price was thus what the defendants got by the practice of the one process over the practice of the other. The situation is not unlike that in Novelty Glass Company v. Brookfield, 170 Fed. 946, 957, 95 C. C. A. 516, where the complainants were awarded the entire profits derived from the sale of articles made .by the defendants on the infringing machines, it being shown that articles made by the use of other machines which were open to them were not salable. The defendants here by using the patented process were able to produce glass for which they got just so much more than they got for glass made by the Cummings process, and the difference was the saving or advantage to them; the cost of production in each case being substantially the same. The average selling price of the defendants' pressed product was 26 cents a square foot, and the average price in the market of rolled prism plate was not to exceed 12 cents, the defendants contracting to sell their whole product to the 3-Way Prism Glass Company as low as 8 and 10 cents. This was a gain of 14 cents a foot. And as 90,308 square feet of salable glass was manufactured, and we are dealing not with the question of profits, but with the relative value of the product made, the total gain to the defendants, on this basis, from the use of the patented process, was $12,643.12—that is to say, 90,308 times 14—to which extent, in any event, they must account. There is nothing of this, it is to be noted, to be attributed to the wiring, nor to the fluted or lenticular back, of which something is made in the evidence. These features no doubt contribute to the market value of prism glass where they are used. But in the figures named the prices for glass of that character are not taken, but only the price of plain pressed prism plate.

But this is not all for which the defendants should account. They are liable by way of damages for the sales, if any, which the complainants lost; and they sold some 57,591 square feet, which, if the patents had been respected, the complainants, in all probability, would themselves have sold. The complainants and the defendants were the only parties engaged in the manufacture of pressed prism plate, and were in direct competition for the trade, the complainants being abundantly equipped to take care of whatever trade there was. It is reasonably certain, therefore, that, if the defendants had not sold this glass, the complainants would. The comparative diagram made by Mr. Wadsworth demonstrates this, the sales made by the complainants increasing as those of the defendants fell off, and going up with a bound, notwithstanding the augmented price when the injunction cut off the infringement. Something, it may be, is ordinarily to be allowed for business enterprise, by which goods are advertised and pushed; all that one party disposes of not necessarily being taken away from the other. But in the face of the showing made this can hardly be held to apply here. The trade in this character of glass was within narrow lines, being confined to the two parties before the court. It was not as in Brookfield v. Novelty Glass Company, 170 Fed. 960, 95 C. C. A. 516, where there were others in the field. That profits of which the holder of a patent has been deprived by reason of lost sales due to infringement are a proper subject of damages there can be no doubt.

Covert v. Sargent (C. C.) 38 Fed. 237; National Company v. Elsas, 86 Fed. 917, 30 C. C. A. 487; Rose v. Hirsh, 94 Fed. 177, 36 C. C. A. 132, 51 L. R. A. 801; Kinner v. Shepard (C. C.) 107 Fed. 952; Goulds v. Cowing, 105 U. S. 253, 26 L. Ed. 987. And in the present instance, if the complainants had not been interfered with, they would have been large. The prices which the complainants established early in 1904, when they first offered pressed prism plate to the trade, varied from 42¾ to 60 cents a square foot, according to the size of the sheet, and whether canopy or skylight, or cut to order, or in car load lots, these prices being a little less than the mean average price for prism tiles. While the infringement was going on, however, these figures were cut nearly one-half, and sales made as low as $18^2/_9$ cents, although by far the largest quantity was sold at 33⅓ cents. And, when the defendants were enjoined, the prices were put back to where they were before, notwithstanding which advance, as already stated, the sales largely increased. It is fair to assume, therefore, that, except for the infringement, the prices originally established would have prevailed, the average of which was about 50 cents, at which there was a profit to the complainants of some 42 cents above the factory and other costs, which were about 8 cents. And this on the whole quantity sold by the defendants—57,591 square feet—would amount to $24,188.22. To this sum the complainants are entitled by way of damages for profits lost on sales of which they were deprived.

This also suggests another source of damage of which they may further complain. If, except for defendants' infringing competition, the complainants would have been able to maintain prices at the figures which they started out with, and to which they subsequently returned when the infringement was stopped, they are entitled to be recouped for the loss which ensued by reason of the low prices to which they were forced to come down. As is said in Yale Lock Company v. Sargent, 117 U. S. 536, 6 Sup. Ct. 934, 29 L. Ed. 954:

"Reduction of prices and consequent loss of profits, enforced by infringing competition, is a proper ground for awarding damages."

And there are numerous other cases to the same effect. Boesch v. Graff, 133 U. S. 697, 705, 10 Sup. Ct. 378, 33 L. Ed. 787; Creamer v. Bowers (C. C.) 35 Fed. 206; Kinner v. Shepard (C. C.) 107 Fed. 952. The sales of the complainants during the year 1905, as to which alone claim on this account is made, amounted to 36,282.6 square feet, and they were made at prices ranging all the way from 54 to $18^2/_9$ cents, the total amount realized therefrom being $11,780.28. But at 50 cents a foot, at which, as we have seen, it is reasonably certain that the same quantity and more could have been sold, the complainants would have received $18,141.30, a loss of $6,361.02, directly due to the low prices which the defendants forced. It is said that, while the complainants were selling 36,282.6 square feet, the defendants sold but 3,852, by which it is not possible that any such damage was done. But this does not state the whole case. The fact that the complainants reduced their prices, and were compelled to do so because the defendants were in the market at lower figures for the same goods, clearly appears, and the defendants are chargeable with the consequent loss to the com-

plainants, regardless of the quantity of goods sold by them during that time. That the complainants' sales increased while the defendants' fell off may well have been due to the reduction in price which the complainants made, which, with the monopoly of the market by reason of their patents, if no infringing goods were put out, would not have been required of them.

As the result of these conclusions, the defendants must therefore account:

| | | |
|---|---:|---:|
| (1) For the gain or saving which they have made by the use of the patented process over others which were open to them, producing the same character and grade of glass............................... | | $12,643.12 |
| (2) For damages | | |
| (a) By reason of sales of which the complainants were deprived, and by which they would have profited to the extent of.............................. | $24,188.22 | |
| (b) For the loss of profits occasioned by the reduction in prices, compelled by the infringement....... | 6,361.02 | 30,549.24, |
| Making the total amount for which the defendants are liable............................. | | $43,192.36. |

It is urged by the complainants that the damages should be trebled under the power given by the statute. Rev. St. §§ 4919, 4921 (U. S. Comp. St. 1901, pp. 3394, 3395). But there seems to be no occasion to carry the case to that extreme.

It is urged, on the other hand, by the defendants, that full costs should not be given, only two of the three patents relied on being upheld, and one claim of the method patent not having been infringed, to say nothing of the claim of the machine patent, which was abandoned in the course of the suit. But it does not appear that the expenses to which the defendants were put were increased to any appreciable extent by reason of the patent or claims which went out, and, if so, there would seem to be no occasion for withholding a part of the costs, and the defendants' one exception which goes to this question is overruled. But the complainants' exceptions, so far as the master's report is at variance with this opinion, are without further specification sustained.

Let a decree be entered in favor of the complainants for $43,192.36, with costs.

