## POWER SPECIALTY CO. v. CONNECTICUT LIGHT & POWER CO.

District Court, D. Connecticut.    August 1, 1928.

No. 1869.

1. **Patents** ⟨⟩26(2)—Invention may arise from old elements organized in new and useful manner to produce more beneficial result.

Old elements, if organized in new and useful manner, so as to produce more beneficial result, may constitute invention.

2. **Patents** ⟨⟩167(1¼)—Specification is treated as amplification of claim, where claim is stated in terms consistent with description.

If terms in which claim of patent is stated are consistent with description, specification, with its drawing, is treated as an amplification and explanation of the claim.

3. **Patents** ⟨⟩101—Claim of patent should be sustained, where it renders nature of invention evident to those to whom specification is addressed.

Claim of patent should be sustained, as sufficiently definite, whenever in connection with description or specification, and in view of state of art, it renders the nature of the invention evident to persons to whom specification is addressed.

4. **Patents** ⟨⟩328—No. 1,565,305, claim 2, for apparatus for effecting coal economy in steam-generating plant, held not void for want of novelty or indefiniteness.

Bell patent, No. 1,565,305, claim 2, for apparatus for effecting coal economy in steam-generating plant, *held* valid as against claim of want of patentable novelty and of indefiniteness.

5. **Patents** ⟨⟩248—Improvements which do not present new combination of elements found in patent do not avoid infringement.

Improvements on patentee's combination, which do not present new combination of the elements of the patent, do not avoid infringement.

6. **Patents** ⟨⟩328—No. 1,565,305, claim 2, and fuel economizer in steam-generating plant, held infringed.

Bell patent, No. 1,565,305, claim 2, for fuel economizer by apparatus for abstracting heat from waste gas in steam-generating plant, *held* infringed.

In Equity. Patent infringement suit by the Power Specialty Company against the Connecticut Light & Power Company. Decree for plaintiff.

William G. McKnight, of New York City, and Henry F. Parmelee, of New Haven, Conn., for plaintiff.

Alfred H. Hildreth and Melvin R. Jenney, of Boston, Mass., for defendant.

THOMAS, District Judge. The bill in this case charges defendant with infringement of letters patent No. 1,565,305, granted to plaintiff on December 15, 1925, upon an application filed by John E. Bell on July 1, 1922, for a steam-generating plant.

The defenses are the usual ones of noninfringement and invalidity by reason of anticipation by, and lack of invention over, prior patents and publications and the prior art. It is also alleged as a further defense that the patent is invalid, because of indefiniteness and uncertainty of the patent and the claim.

The defendant is engaged in the generation and sale of electricity, with a large power plant located in Devon, Conn. The defense of this suit was assumed and conducted by the B. F. Sturtevant Company, which manufactured and installed in the defendant's power plant an economizer, which is charged to infringe claim 2 of the patent in suit.

Claim 2 is the only one in issue, and it reads as follows:

"2. The combination, with a boiler and its furnace, of an economizer comprising a bank of horizontally disposed tubes externally swept by the heating gases leaving the furnace, and through which feed water is passed into the boiler, said tubes being each provided with external circumferentially extending ribs, proportioned and disposed to make the external surface area of the tube several times greater than its internal surface area, and being each of a length many times greater than its maximum diameter, and being spaced to provide an external tube surface area per unit of space occupied by said bank, which is several times greater than is practically possible with tubes which are of the same internal diameter and have smooth outer walls."

It will thus be seen that the claim calls for a fuel economizer, which is an apparatus for effecting coal economy in a steam-generating plant by abstracting heat from the waste gases after they have left the boiler furnace, and utilizing such heat to raise the temperature of the feed water before it enters the boiler; or it may be defined as a device equipped with heating surfaces subjected to the furnace gases, just as the boilers, but separated from and above the boiler, and receiving the feed water first. Devices of this type usually comprise a plurality of pipes or tubes, located in a passage or flue through which the hot waste gases from the boiler furnace pass to the stack or chimney. The exterior surfaces of the pipes or tubes are exposed to the departing gases and absorb heat, which in turn is transmitted to the feed water within the tubes, as it passes through the econ-

omizer on its way to and before it enters the boiler tubes.

For obvious reasons it is desirable to expose as large a surface of metal to the heat of the gases as possible. To secure this advantage it was proposed, many years prior to the filing date of the application which resulted in the patent in suit, to corrugate the exterior of the tubes, as is shown in the Kablitz patent, No. 886,516, issued May 5, 1908, the French patent, No. 237,583, dated April 7, 1894, and United States patent, No. 1,239,377, to Foster, dated September 4, 1917, which was assigned to this plaintiff.

A further desideratum of steam economizers is the flow of water through the tubes downward in a direction opposite to the flow of the furnace gases, which is upward and against the tubes. This feature has long been recognized by those working in the art, as is shown in the Foster patent just mentioned. The invention there disclosed relates to a fuel economizer, and one of its important features consists in arranging the economizer so that the feed water is introduced at the top of the boiler, and by aid of gravity zigzags back and forth across and downward in counter current to the rising gases, so that the highest temperature of the feed water is at the point where it enters the boiler proper.

Bell was an engineer in this art for a number of years, and was fully aware of the actual and practical economizer art, and of the prior patents relating to it, as well as the general state of the art, and had taken out various patents relating to steam engines. In the patent in suit he assembled old elements in a new organization of parts, so as to produce a more beneficial result. He recognized that high draft resistance in the passage or flue leading to the stack or chimney of a boiler, always recognized prior to his invention as a waste, could be converted into a profitable investment.

Appreciating that the rate of heat transmission to the economizer tubes varies proportionately with the velocity of the flow of the hot waste gases over the tube surfaces, Bell made the discovery that, by combining extended surface tubes with the closest possible spacing of such tubes, a close rubbing contact of gases on metal, and consequently a high rate of transmission, as well as high draft loss, would be produced. Bell accepted this loss because he appreciated that with his structure there is developed an increase in the rate of heat transmission which more than compensates for the draft loss. He realized that the provision of extended surface tubes alone would not be sufficient, and that the

27 F.(2d)—59

compacted heating surface, so arranged and disposed and spaced that it obstructs the draft, results in a highly efficient economizer.

The Bell construction, as described in the patent in suit, combines with a boiler and its furnace an economizer, which comprises a bank of horizontally disposed tubes provided with external circumferentially extending heat absorbing ribs. The feed water passes through these tubes into the boiler in a direction opposite to that of the waste gases. The external ribs on the tubes are so proportioned and disposed as to make the external surface area of the tubes several times greater than their internal surface area. Each tube is of a length many times greater than its maximum diameter. The tubes are spaced to provide an external tube surface area per unit of space occupied by the bank of tubes which is several times greater than is practically possible with tubes which are of the same diameter and have smooth outer walls. The economizer is characterized by its compactness, which not only reduces the bulk and initial cost of the economizer, but makes it feasible to inclose the economizer in a housing which forms part of the boiler and is sufficiently air-tight to eliminate air leakage into the economizer, notwithstanding the high draft suction required to move the heating gases through the boiler and economizer.

Defendant contends that claim 2 is invalid, in view of the prior patented and published art, and also in view of the prior unpatented art, but is unable to point out anything in the art which discloses the principle of draft loss in the operation of an economizer. It is true that claim 2 does not specifically mention such draft loss. It does, however, call for an organization and arrangement of the economizer tubes which result in a draft loss—a beneficial result not obtained prior to Bell's invention.

[1] Even if it be admitted that all the elements of plaintiff's device are old per se, yet there may be invention where they are organized in a new and useful manner, so as to produce a more beneficial result. This was the rule laid down by Judge Severens, speaking for the Circuit Court of Appeals for the Sixth Circuit in Western Electric Co. v. North Electric Co., 135 F. 79. On page 89 he said:

"All three of these patents may well stand upon the rule which has several times been affirmed in this court, namely, that while the mere assembling in a new organization of parts of old structures to perform the same function in their new place that they did in the old is not invention, yet where they are

so taken and are organized in a new and useful manner, so as to produce a more beneficial result, there may be invention; and when the combination displays the exercise of intuitive skill and genius beyond that possessed and exercised by those well skilled in the practice of their art, and the discovery is of something new and useful, invention should be recognized."

[2-4] Defendant also argues that claim 2 is void because it is indefinite, in that it fails to comply with the statute, and because it abounds in indefinite and uncertain phrases. There seems to be no merit to this contention, because it has long since been settled that, if the terms in which a claim is stated are consistent with those of the description, the specification with its accompanying drawings is treated as an amplification and explanation of the claim, illustrating and applying its more concise and definite expressions. A claim should be sustained whenever, in connection with its proper exponent, the description or specification, and in view of the state of the art, it renders the nature of the claimed invention evident to those to whom the specification is addressed, and, of course, that means to those who are skilled in the art. It cannot be denied that the patentee's description—that is to say, the specification of the patent apart from its claims—refers to the several phrases to which defendant takes exception on account of indefiniteness, disclosing many examples of embodiment of the invention, so that the said claim is far from being indefinite when reference is had to the specification. The claim covers, therefore, every feature of the invention which the description has declared to be essential and all the modes of using it therein described. In view of the foregoing, it is held that claim 2 in suit is valid.

### Infringement.

[5, 6] There is no dispute as to the construction of the economizer manufactured and installed by the Sturtevant Company and used by the defendant in its generating plant at Devon. It is admitted that such construction is correctly illustrated in Plaintiff's Exhibits 2, 2A, 2B, 2C, and 2D. The evidence adduced in connection with these exhibits convinces me that defendant's device comes within the terms of the claim in issue, because the defendant's construction embodies the elements recited in the claim in the same combination, location, and arrangement. Defendant, in comparing tube surface area of its tubes per unit of space occupied by the bank of tubes with the disclosure of the pat-

ent, includes the space between the tube banks, occupied by soot blowers, and consequently arrives at a figure which differs from that mentioned in the patent. However, it is evident that "external tube surface area," as used in the claim, means "external heat-absorbing surface," and "per unit of space occupied by said bank" means any unit of volume of the heat absorbing surface of the tubes. By no means does it mean space occupied by soot blowers or any other apparatus.

Defendant points out other differences between its economizer and that disclosed in the patent in suit. These differences, however, are really improvements upon plaintiff's construction. Of course, defendant has the right to make improvements upon plaintiff's combination. However, inasmuch as these improvements do not present a new combination of the elements found in plaintiff's patent, they do not avoid infringement.

Plaintiff is entitled to the usual decree for an injunction, reference, accounting, and costs; and it is so ordered.