## POWER SPECIALTY CO. v. CONNECTICUT LIGHT & POWER CO. et al.
### No. 164.

Circuit Court of Appeals, Second Circuit.
Jan. 6, 1936.

Charles Neave, of New York City, for appellants.

Drury W. Cooper, of New York City (William G. McKnight, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

## MANTON, Circuit Judge.

The decree appealed from, entered after confirmation of the master's report, made an award to the appellee of $209,612.18, with interest and costs. The patent sustained and held infringed in Power Specialty Co. v. Connecticut Light & Power Co. (D.C.) 27 F.(2d) 928, affirmed (C.C.A.) 31 F.(2d) 1018, was for a steam generating plant, the specific improvement being an economizer. The damages awarded below were made up of damages for sales lost to the plaintiff by the defendant's installation of 23 infringing economizers. Profits which the appellee would have made had it sold these economizers were allowed in the sum of $154,866.36. On one installation, which admittedly would not have been made by the appellee in any event, the appellant's profits of $16,565.43 were allowed. An allowance was also made for each of four installations in which the court found the appellee had been obliged to reduce its prices to meet appellant's competition. This damage amounted to $38,180.39.

As to the lost sales items, appellant contends the evidence does not establish that appellee would have made the sales in 22 of these installations. It admits responsibility for one lost sale. It argues that an allowance of a reasonable royalty, and not lost sales profits, is the proper measure of damages. Further, it argues there was no wanton or willful conduct in the infringements; also that the appellee did not, because of the appellant's competition, reduce its prices in selling its economizers in three of the four sales where this is claimed.

What a patentee would have made had not the infringer interfered with his right to his patent monopoly is, not what speculatively he may have lost, but what he actually did lose. Seymour v. McCormick, 16 How. (57 U.S.) 480, 14 L.Ed. 1024. What one claiming infringement would have made if an infringer had not made the sales cannot be left to inference, conjecture, or speculation. See Dobson v. Hartford Carpet Co., 114 U.S. 439, 444, 5 S.Ct. 945, 29 L.Ed. 177; Dobson v. Dornan, 118 U.S. 10, 6 S.Ct. 946, 30 L.Ed. 63.

The holder of the patent must show that he would have made the sales if the infringer had not. McSherry Mfg. Co. v. Dowagiac Mfg. Co., 160 F. 948 (C.C.A. 6). It may not be assumed that, if the appellant did not make the sale the owner of the patent necessarily would. Underwood Typewriter Co. v. E. C. Stearns & Co., 227 F. 74 (C.C.A.2). Although appellant and appellee were the only manufacturers of the patented economizer, it does not follow that, if the sales had not been made by the appellant, the appellee would have made them. Other manufacturers were selling economizers suitable for steam plants. The court below found that one installation claimed as an infringement would probably have been awarded to a manufacturer other than appellee if the appellant had been unsuccessful, and that in this instance there were economizers other than appellant's and appellee's available to those desiring to use them. Moreover, most operators of steam plants did not use economizers. An economizer is a device which uses the hot waste gases from a boiler furnace to preliminarily heat the water before it goes to the boiler. To justify its installation, it must be purchased within a certain maximum cost. Not over 15 per cent. of the power plants are so equipped. There are other ways of effecting economies than by the use of an economizer, as by boiler design or an air heater.

In 22 of the installations claimed, the evidence does not justify the conclusions reached below. In installations 11, 12, 15, and 24, appellee made no bids, nor indeed ever heard of the opportunity to bid. No claim of loss or profits would be justified unless the customer had to have an economizer of a kind which it must have bought from the appellee if not from the appellant. It appears in these instances that the buyers might have purchased devices other than the appellant's economizers or might not have bought any. Moreover, the utility of an economizer is directly related to its cost. For two of these installations, it is not shown that the standard prices were effective and there is no way of knowing what the appellee might have bid. The Wyman-Gordon installation (No. 2) was a bid for appellant's economizer erected with all auxiliary apparatus for $18,000. Appellee's bid was $17,280 with some, but not most, of the auxiliary equipment and without erection. The additional cost

of this equipment and of erecting would be $13,000, making a comparable total bid of about $30,000. The plant engineer for the customer testified that the reason why the contract was awarded to the appellant was the fact that the appellant would do a complete job, and said: "I do not think we could have got the money appropriated for the Power Specialty job at $30,000. We would have had to go to cast iron which would have given us the same results for $10,000 less." It is not established that the appellee would have made this installation but for the appellant's bid.

In the Acme Cement installation, appellee's bid stated that it would guarantee no performance of this economizer against corrosion if the water was admitted to it at a temperature below 150° F. The customer's vice president saw appellant's lead-coated economizer guaranteed against corrosion for five years, and stated that it seemed to exactly meet his problem; and the Babcock-Wilcox Company bought appellee's economizer and furnished it to the customer as a part of its contract. This circumstance sufficiently negates the probable purchase by this customer from the appellee.

The Raton installation required for some of the banks of economizers feed water temperature of 90°. The appellee's bid gave no guaranty against corrosion for this low temperature. Appellant and another company bid; the latter for a noninfringing economizer. The customer in making the selection said that, as between the Green Company's economizer with a guaranty of performance and appellant's economizer with no guaranty of performance, "we would have to take the Green Company's with the guaranty." And he said that "it (the Green Company's economizer) would have satisfied the requirements of the job," and "we would not have felt justified in taking the Power Specialty economizers at the prices shown in their bids with no guaranty of performance."

In the Consolidated Paper installation, appellant's bid and a third company's bid on a noninfringing economizer were lower than the appellee's. The appellant was awarded the contract. The customer's consulting engineer stated that the appellee's bid was too high and that the economizer at that price "would not have shown a return high enough to justify

the requirements * * * the matter of economically justifying an economizer at the prices mentioned in the different bids was taken into consideration at the time I gave my approval to the Sturtevant bid." The appellee's bid "would have been economically unjustified under the circumstances, we could not have justified that expenditure * * * it would be cheaper to get along without an economizer at all."

In the Youngstown installation, the customer decided to ask appellee for a bid which when received contained "certain features with this that we did not think would fit our plan," so they asked the appellant to bid. The final responsibility for the purchase rested upon the customer's chief engineer, who said that, as between the appellee and a third company's bid, "if the defendant had not bid we had a certain amount of money we could use and we could have put the Heine in for that amount. We could not have put Power Specialty in for that amount." From this record it seems clear that the customer would have purchased the Heine had the appellant not bid.

In the Worcester Salt installation, the economizer offered by the appellee was a single group, and, in order to get it into the building, it would have to occupy a room directly back of the boiler. "It was practically impossible or impracticable to put an economizer in that space. We had to situate it above our tube line." This apparently was the reason for not buying from the appellee. As the official of the buyer, whose duty it was to select the equipment to be purchased, said, "If the Sturtevant Company had not offered us this economizer, I do not know what the probabilities are as to our having accepted the Power Specialty's bid for their economizer. * * * I do not think we could have put it in the way it was offered to us."

In the city of Cleveland installation, the customer had two of appellant's noninfringing economizers in which the space between some of the tubes had become clogged due to negligence in operation. Instead of replacing the old tubes, the appellant offered to put in new tubes of the infringing design; the old casings, old fittings, and their equipment were undisturbed except for the tubes and the washing apparatus. Appellee was advised as to the details, and was invited to bid. It

did not do so, and probably could not have done so successfully. The court below found that, if the appellant had not replaced the old tubes, the appellant would have sold two complete economizers for $30,300. This assumption may not be indulged in.

In the Gates Rubber Company installation, the appellee made two bids; the second at a reduced figure in view of the customer's ability to pay. The consulting engineer said that it could not afford to pay the price offered in either bid, and that, in the event that other economizers had not been available, "we would have increased the boiler surface, probably made the boiler a three-pass boiler instead of a two-pass boiler, and employed such engineering ways which we could [not?] do without sacrificing too much in economy." This does not warrant the conclusion that, if appellant's economizer had not been sold, appellee would have made the sale.

In the Minn. & Ontario installation, the appellee's bid was for three economizers to be used with some new boilers the customer was installing. Appellant bid a year later for two economizers to be used in conjunction with old boilers already installed. The chief engineer of the customer testified that he did not recall any bid by the appellee, and denied the applicability of a proposition such as the appellee's "to the installation we were considering."

In Iowa Paper Company installation was a replacement of old pressure parts in three of appellant's noninfringing plain tube economizers which had been sold in competition with the appellee's extended surface economizers. After two years' service, the cast steel heaters began to leak. This was reported to the appellant for attention, and the matter was adjusted by appellant removing the old pressure parts and replacing them with new pressure parts which were an infringement. The old casings were not disturbed; the general manager testified that the delivery of the new economizers was really considered a matter of the appellant making good on a prior installation of noninfringing economizers. New headers remedying the defect could have been put in for $15,200, whereas the bid of the appellee was for three new complete economizers at $59,000. The customer's vice president and general manager testified

that the appellee's bid was not seriously considered "because a lot of money was to be spent." The appellee has failed to meet its burden of proving that it lost the sales and would have made them if the appellant had not done so.

The testimony on these bids came from the engineering staff of the various customers. It cannot be disregarded. On the contrary, it affirmatively establishes the fact that in these instances the appellee would not have made the sale.

With this in mind, it is clear that the devices available for filling the customers' needs were not limited to those marketed by the appellant and the appellee. On reading the evidence, the appellee's failure to establish that a customer would be obliged to buy from it, if not from the appellant, is apparent. On this ground, of lack of proof, damages for lost sales on installations 4, 5, 10, 13, 21, 22, and 23 must be disallowed.

In the Western United Gas installation, the appellee sold four economizers to the customer at the same time that appellant sold one. This was purchased as an experiment, and, if it had not been on the market, the appellee would have gotten the order for the five. In this instance, the appellee was entitled to damages on the basis of lost sales.

From the foregoing, it is clear that the allowance of profits on a basis of lost sales was not sustained by the proof, and the appellee's damages should not have been thus measured. Where lost sales profits have been allowed, the courts have found that, but for the infringement, the plaintiff would have made the sales either to the infringer himself or to the eventual customers. Oil Well Improvements Co. v. Acme Foundry & Machine Co., 31 F.(2d) 898 (C.C.A.8); Bemis Car Box Co. v. J. G. Brill Co., 200 F. 749 (C.C.A.3); Rose v. Hirsh, 94 F. 177, 51 L.R.A. 801 (C.C.A.3); Pressed Prism Glass Co. v. Continuous Glass Prism Co., 181 F. 151 (C.C.Pa.); Creamer v. Bowers, 35 F. 206 (C.C.Del.). This fact must be proven and cannot be presumed. Seymour v. McCormick, supra. See, Cincinnati Siemens-Lungren Gas Illuminating Co. v. Western Siemens-Lungren Co., 152 U.S. 200, 204, 14 S.Ct. 523, 38 L.Ed. 411. Without sufficient proof, as here, the damages should be measured on the basis of a reasonable royalty. Rockwood

v. General Fire Extinguisher Co., 37 F.(2d) 62 (C.C.A.2) certiorari denied 269 U.S. 571, 46 S.Ct. 26, 70 L.Ed. 417.

■ The appellee's vice president in his testimony made claim to a royalty of 20 to 25 per cent. as reasonable. When the patent was held valid and infringed, the parties during the pendency of the appeal suspended the injunction, agreeing that the appellant could continue to make and sell its infringing economizer on payment of a royalty of 7½ per cent. of the appellant's selling price. The appellee asserts it would have sold the 23 installations for $360,397. The appellant's total receipts for the installations, exclusive of the Franklin Sugar job, were $210,297.95; that is, the 23 installations as to which damages for lost sales were awarded below. Deducting the gross receipts of the appellant for the Western United job, the amount is $298,050.11. We think a reasonable royalty on all the evidence would be 15 per cent. of the moneys appellant received for these 22 jobs, and that this should be allowed.

■ There is no justification for punitive damages here as upon wanton, deliberate, and willful infringement. Rockwood v. General Fire Extinguisher Co., supra; Brown Bag-Filling Mach. Co. v. Drohen, 175 F. 576 (C.C.A.2); Expanded Metal Co. v. General Fireproofing Co., 247 F. 899 (D.C.N.D. Ohio), appeal dismissed 272 F. 1021 (C.C.A.6).

■ It was error to allow recovery for reduction in prices in appellee's original bid due to the competition of the appellant in three of the instances where the installation was made by the appellee. To succeed in this claim, appellee must prove that it lost profits because it was compelled to lower its price solely because of competition by the appellant. Boesch v. Graff, 133 U.S. 697, 10 S.Ct. 378, 33 L.Ed. 787; American Can Co. v. Goldee Mfg. Co., 31 F.(2d) 492 (D.C.E.D.N.Y.) affirmed 31 F.(2d) 494 (C.C.A.2).

In the United Electric Light & Power installation, the appellee asserts it was obliged to cut its price $15,341 solely because of underbidding by the appellant. On August 23, 1927, the appellee bid $217,-000 for three economizers. Appellant's bid, August 26, 1927, was $67,210 for one economizer, slightly larger. October 19, 1927, appellee made a new bid for two economizers, and it knew at that time that the third economizer was to be furnished by some one else. Appellee received $125,-000 for two economizers, or $62,500 each. The contract was accepted January 17, 1928. Appellee asserts this reduction was due to appellant's bid. In the first place, the reduction was much larger than could have been made necessary by that bid. Moreover, November 23, 1927, a third bidder's bid for one economizer was $67,000, and in a letter of November, 1929, it said that the proposal had been revised to "conform to your recent letter," so apparently there had been an earlier proposal which might have motivated the reduction. However, the cause is more clearly explained. The appellee's vice president testified as to the reduction and said: "The volume of production in economizers was such that I found cost reduced and I revised my price list in October, 1927." When he made his reduced bid, the October, 1927, prices were in effect, and we think that the plaintiff's bid of $125,-000 for two economizers indicated that he was actually bidding at a higher price than the standard price. Appellant actually received more than the standard price for these two economizers, and it should not be held that the appellant's bid caused the reduction. If the appellant had not made any bid and the appellee had simply charged the United Company what it claims it had established as its standard price, the appellee would have received only $96,180 for its two economizers; but it received more. There was therefore no loss which can be traced to the appellant's competition in bidding.

In the National Tube installation, appellee reduced its price due only to the general reduction which it made at that time. August 16, 1927, it bid on three economizers $56,100. In October, when it revised its list, not because of competition but because of reduced shop cost, it authorized its Pittsburgh office by telegram to take the business for $52,500. This was for some three economizers previously bid for. Dividing the price by the total square feet, it is $2.08, the exact price established by the appellee, in October, 1927, for units of the size here involved. This was not caused by the appellant's act of bidding.

In the Barstow installation, appellee bid on two economizers and two superheaters. The customer's employee tele-

phoned that "the aggregate bid of the Sturtevant economizer and the Alaska superheater was $23,000 below the prices that we have submitted," so the appellee took $23,000 off its bid. But appellee had received no information as to appellant's bid for the economizers, but only as to the aggregate of the bids of appellant for economizers and of another company for superheaters. Appellee reduced its bid for economizers plus superheaters; the amount of each reduction is not apportioned. It appears that the man in charge of appellee's economizer department and the one in charge of the superheater department "conferred and allocated the sum of $27,400 for these economizers." It is not shown that the appellee's bid on the economizers was reduced solely by appellant's bid, and the amount of reduction of appellee's bid for the economizers was "an allocation only." There were no damages established as a result of the appellant's competition in these three sales. The appellee is entitled to a decree for damages as follows:

| | |
|---|---|
| (1) Appellant's profits on installation 1—Franklin Sugar Co.—as approved by the court below | $16,565.43 |
| (2) For the loss of one installation, Western United as found below | 5,415.18 |
| (3) 15% royalty on the appellant's selling price of the remaining installations | 29,707.52 |
| (4) Plaintiff's loss due to reduced price in New York Steam installation of | 5,881.79 |
| Making a total of | $57,569.92 |

The decree will be modified accordingly.