### TURRILL v. ILLINOIS CENT. R. Co.

### SAME v. MICHIGAN S. & N. I. R. Co.

*(Circuit Court, N. D. Illinois.* February 6, 1880.)

1. PATENTS FOR INVENTIONS—INFRINGEMENT—DAMAGES—PROFITS.
    In estimating profits made by the infringer of a patent, the comparison must be between the patented invention and what was known and open to the public at and before the date of the patent. If the rule were otherwise, a patent might be practically destroyed by subsequent inventions.
2. SAME—INTEREST.
    Interest is properly allowable on a decree for profits from the time the report is in proper form for exceptions.

In Equity.

*F. H. Kales* and *West & Bond,* for complainant.

*George Payson* and *J. N. Jewett,* for defendants.

HARLAN, Justice. Looking into the records of these cases as they were presented to the supreme court of the United States in 1876, (94 U. S. 696,) I find that decrees were rendered against the Chicago & Alton Railroad Company, the Chicago, Burlington & Quincy Railroad Company, the Pittsburgh, Fort Wayne & Chicago Railroad Company, the Michigan Southern & Northern Indiana Railroad Company, and the Illinois Central Railroad Company, for the infringement of the Cawood patent. As to the three companies first named, the decrees were affirmed upon the ground that the machines used by them were infringements of that patent. The decrees against the Michigan Southern and Illinois Central were reversed, because the sums adjudged against them improperly included profits made from the use of certain other machines which were declared by the supreme

court to be non-infringing, to-wit, the "Bayonet Vise," the "Michigan Southern," and the "Beebe & Smith" machines. To that extent the decrees against those companies were held to be erroneous, and the causes were remanded, with directions for further proceedings in conformity with the opinion of the court. They were again referred to the master, with directions—upon the testimony on file, if sufficient; if not, upon additional testimony—to ascertain the amount to be deducted for the work done by the "Beebe & Smith," the "Bayonet Vise," and the "Michigan Southern" machines. To his report numerous exceptions have been filed by the defendants.

Upon the last hearing before the master, proof was made tending to show that, during the period covered by the accounting, the Michigan Southern & Northern Indiana Railroad Company had a license to use the Beebe & Smith machine, with which, it is claimed, the company could achieve the same results at less cost than was incurred in the use of the Cawood machines. The company, it is contended, saved nothing by using the Cawood machines, and made, in fact, no profits therefrom. These propositions strike at the foundation upon which plaintiff's whole cause of action rests, and must be first examined.

I doubt very much whether the question thus raised is open for consideration. The former decree embraced profits made by the company in the use of the several machines, in addition to the Cawood, which were held by the circuit court to have been infringing machines. The supreme court affirmed the decision against the two companies, now before me, as in all respects correct, except to the extent that it included in the recovery profits arising from the three non-infringing machines. There is, consequently, fair ground to contend that the only inquiry now open is, what part of the original sum found against the defendants represents, upon the standard of comparison heretofore adopted, the profits arising from the non-infringing machines? The standard of comparison now insisted upon involves the recasting of the whole account, including that portion representing the profits alleged to have been made by the use of the Cawood machine.

But, waiving any determination of the question as to my right to open the case, or to direct the accounting to be had upon a standard of comparison different from that adopted upon the original hearing. I am of the opinion that in estimating the profits made by the company from the use of the Cawood machine, we must compare that device with what was known and open to the public at and before the date of the Cawood patent. The Beebe & Smith invention was subsequent to the Cawood. The company had the right to use the former during the period of accounting, and take to itself all savings or profits derived from its use. But it had no right to use the Cawood machine, and enjoy the savings derived from such use, simply because it *may* have made the same profits at less expense from another ma-

chine, patented subsequently, which it was *at liberty* to use, but chose *not* to use.

The Cawood and Beebe & Smith machines were independent inventions. The latter is asserted to be, at least, equally useful with the former. The owner of each invention is entitled to be protected in the exclusive enjoyment of his patent for the term prescribed by law. If the position of defendants' counsel be tenable, a prior patent may be practically destroyed, and the owner deprived of all profits arising therefrom, by obtaining from a junior patentee a license to use his invention. If the latter be equally useful with the former, the claim of the prior patentee for profits realized from the actual use of his invention by an infringer can always ·be defeated by showing that the infringer was *at liberty* to use, although he did not use, the subsequent invention, and might have made thereby the same or greater profits at less cost. Indeed, upon the principle or theory asserted by defendants' counsel, the junior patentee may himself use the invention of a prior patentee without liability to the latter for profits, provided he shows that had he used his own invention he would have accomplished the same or better results at the same or less cost. I do not believe such to be the law, although in several cases cited by counsel there are general expressions which seem to sustain that view. But, after close study of those cases, I am of opinion that in no one of them was the precise point now under consideration in the mind of the court, or necessarily involved in the decision. ·

Defendants' counsel insist that the whole calculation of the master is faulty in theory and method, and unwarranted by the evidence. I perceive no substantial objection to the rule or theory which controlled the master in his calculations. The difficulty I have is in his interpretation of the evidence. He has not, I think, given sufficient weight to the statements of some of the witnesses, and in some instances he has construed statements most strongly against the defendants, when they should be construed most strongly against the plaintiff, by whom or in whose behalf the witnesses were called. This I say without forgetting the rule announced in 9 Wall. 803, and in 4 Fisher, 64.

Referring, first, to the evidence as it affects the claims asserted against the Michigan Southern & Northern Indiana Railroad Company, I am constrained to say that much of the criticism made by counsel for defendants is justified by the proof, when fairly interpreted. The master finds that 80-196 of the sum adjudged against that company represents the profits made by the non-infringing machines, while the defendants' counsel contend that those profits, upon the theory adopted by the master, constitute at least 104-183 of the sum found by the original decree. No one can read the evidence and reach a conclusion upon which the mind will rest in the confidence that it is absolutely correct,—this, because it is not possible

for the plaintiff to prove the exact amount of damage sustained; and it is quite as difficult for the company, under the circumstances, to show with certainty the amount of work done with different machines at its several shops during the period of accounting, and also the advantages derived from using one machine rather than another at a particular shop. I have concluded that the ends of justice, and the directions of the supreme court, will be met by allowing plaintiff a decree against the Michigan Southern & Northern Indiana Railroad Company for $113,952.17, which is the mean between the two sums above indicated.

I have not overlooked what defendants' counsel say in regard to a further deduction upon account of rails mended prior to February 18, 1862, when plaintiff became the owner of the patent. The supreme court said that after the action of the circuit court upon the master's first report, it must be presumed that no profits were allowed for any use of the Cawood patent before the plaintiff became the owner.

Unless I have greatly misapprehended the evidence, different considerations must control the case against the Illinois Central Railroad Company. The objection made to the master's report is that it is erroneous as to the number of rails repaired. In support of that objection reference is made to the report of 1874, which was not made the basis of the original decree. The last reference was made under an order to make such reductions as the opinion of the supreme court required, and the last report makes a reference to the testimony upon which the master makes a deduction of $2,802.78 from the original decree. It does not appear that any further deduction should have been made on account of the non-infringing machines. It is not claimed that the master has overlooked or ignored any evidence bearing upon that point, and I find nothing in the record which authorizes any deduction beyond that made by him. His report, therefore, as to the Illinois Central Railroad Company, is confirmed.

Interest will be allowed from July 12, 1879, at which date the report was in proper form for exceptions.

---

Note. This decision has been recently affirmed by the supreme court. See *Illinois Cent. R. Co.* v. *Turrill*, 4 Sup. Ct. Rep. 5. As to time of comparison in determining profits or damages, there seems to be a conflict between the foregoing opinion of Justice HARLAN and the views expressed by Judge WOODS in *National Car Brake Shoe Co.* v. *Terre Haute Car & Manuf'g Co.* 19 Fed. Rep. 514.