REED ROLLER BIT CO. et al. v. HUGHES TOOL CO.

REED et al. v. CADDO ROCK DRILL BIT CO.

(Circuit Court of Appeals, Fifth Circuit. March 25, 1926.)

Nos. 4514, 4615.

1. Patents ⚖═312(3).

Evidence *held* to show willful infringement of patent for drilling apparatus.

2. Patents ⚖═325.

Under Rev. St. §.4919 (Comp. St. § 9464), it is within court's discretion to assess auditor's expense against willful infringer as punishment for infringement.

3. Patents ⚖═318(4)—Patentee of lubricator for drill bit held entitled to recover of willful infringer profits on complete drill outfits and spare parts, rather than on lubricator only.

Patentee of lubricator for rotary drill bit *held* entitled to recover of willful infringer profits, not only on the lubricator, but on complete outfits or spare parts, which without the lubricator, could not be used.

4. Patents ⚖═318(4)—Willful infringer of lubricator patent held liable for profits on complete machine, supposed not practical without lubricator, though, unknown to it, another method of lubrication existed.

Rotary drill bit manufacturer, willfully infringing lubricator patent, *held* liable for profits on sales of completed machines and spare parts, which it was supposed could not be used without the lubricator, notwithstanding, during accounting period, another means of lubrication, which might have been used in place of lubricator, existed, though unknown to infringer.

5. Patents ⚖═227.

Under Rev. St. § 4886 (Comp. St. § 9430), patentee is bound by prior patents and prior art, irrespective of his actual knowledge.

6. Patents ⚖═218(1)—Assignee held not entitled to set off against royalty claim amounts expended in defending suit to cancel assignment.

Assignee of application for rotary drill patent, to whom patent was issued and whom assignor agreed to protect against infringement claims, *held* not entitled to set off against royalty claim moneys expended in defending suit by assignor to cancel contract.

7. Patents ⚖═218(1)—Assignee of drill bit patent, protected against infringement suit, held not entitled to set off against royalty claim amount expended in defending infringement suit in appellate court, after decree of infringement based on use of lubricator not covered by assignment.

Assignee of application for patent for drill bit, protected against infringement, *held* not entitled to set off against royalty claim expenses incurred in defending infringement suit in appellate court, after decree of infringement in District Court based on use of lubricator not covered by assignment.

**8. Patents** ⟨⇒⟩**218(1)—Assignee of drill bit patent, protected against infringement claims, held not entitled to set off against royalty claim amount of recovery against it in infringement suit based on its use of lubricator not covered by assignment.**

Assignee of drill bit patent, protected against infringement claims, who, because of use of lubricator not covered by assignment, was required to account to another patentee, who was one of assignor's stockholders, for profits on sales of complete drill, *held* not entitled to set off against royalty claim the amount of such recovery, there being no authority in the assignment for him to use lubricator patented by another.

Appeal from and in Error to the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Judge.

Suit by the Hughes Tool Company against the Reed Roller Bit Company and others; with action by Caddo Rock Drill Bit Company against C. E. Reed and another. From a decree for plaintiff in first suit, defendants appeal, and to review a judgment for plaintiff in second suit (4 F.[2d] 136), they bring error. Affirmed in both cases.

See, also, 282 F. 807.

On August 10, 1909, patent No. 930,759 was issued to Howard R. Hughes, upon his application, "for a useful improvement in drills." Claim 19 of the patent is as follows:

"A boring tool, consisting of a head provided with cutting rollers, a lubricant holder, ducts leading from said holder to the bearings of said rollers, and a hollow operating member connected to said head for introducing water into the hole being formed, so as to flush out said hole and also exert pressure on the lubricant in said holder, substantially as described."

On a former appeal to this court, in which this claim, among others, was held valid, we said: "One of the important features of the patent in suit is a chamber or reservoir designed for the purpose of being filled with lubricating oil to be supplied to the drill bits, and another feature is to utilize the downward pressure of the water through the drill pipe, so as to force the lubricating oil into and around the drill bits." 282 F. 807. Prior to the Hughes invention, there were two types of drill rigs in common use—one known as the cable rig, which was operated in rock formations by pounding, and was sometimes known as the "percussion method"; and the other, a rotary rig that had what was called a "fish tail" bit, which would rotate at the bottom of the well and scrape away the formations.

Neither of these types was satisfactory in hard rock formations. The Hughes patent called for rotating cutters, but it was thought essential to have them lubricated with oil, and, in order to obviate the necessity of frequently raising the drill to the top of the ground and constantly replenishing the oil, a large chamber was provided, so as to provide enough oil to enable the drill to continue in operation for an extended period. It was the universal opinion of those engaged in drilling wells through rock that lubrication by oil was essential, and no other rotary type of drill, unequipped with an oil lubricator, could compete with the Hughes device. Hughes organized, and owned practically all the capital stock of, the Sharp-Hughes Tool Company, which later changed its name to the Hughes Tool Company. He secured a large number of patents having to do with drilling devices, and built up a very large and profitable business in the manufacture and sale of his patented devices.

In 1913 Granville A. Humason applied for a patent on a rotary drill somewhat similar to the Hughes drill, and assigned his application to the Caddo Rock Drill Bit Company, which in November of that year was enjoined by Hughes from using or selling any drill containing or employing the lubricating system of the Hughes device. During the years of 1912, 1913, and 1914, Clarence E. Reed was employed, first as auditor, and later as secretary and treasurer, of the Hughes company. At the end of that period he gave up his employment and began to manufacture and sell a drill bit. Hughes procured an injunction on the ground of infringement, which was upheld on appeal by this court. 261 F. 112. Humason assigned his application for patent to the Caddo Rock Drill Bit Company, and in 1917 that company in turn assigned the application, upon which patent later issued, to Reed, under a contract which provided that Reed should pay a royalty of 15 per cent. of the selling price of complete drills or spare parts. Section 5 of that contract reads as follows:

"The parties of the first part further hereby agree to protect the said letters patent from infringements, and defend any such actions, if commenced, in consideration of the party of the second part assuming the cost of manufacturing and marketing drills embodying such improvements, and, if any such actions are prosecuted to a

final judgment, the said party of the first part shall pay such judgment or judgments, including all costs of suit or suits; it being the intention hereby to protect and save harmless the said party of the second part against the claims of infringement of any and all persons, firms, or corporations whomsoever. In the event the party of the second part shall be required to advance funds for the account or protection of the interests of the parties of the first part, and/or elects to do so, under this cause such funds so advanced shall be charged to the account of and deducted from any royalties that may be due or thereafter become due the parties of the first part."

Reed transferred his rights to the Reed Roller Bit Company, which he owned, and from 1917 until 1920 he engaged in the business of manufacturing and selling roller bits in which he used a lubricator that would hold only a gallon of oil. Early in 1920 he introduced an oil lubricator of larger capacity. Hughes promptly sued him for infringement and an accounting. The defense was, not that the Reed lubricator did not infringe, but that the Hughes lubricator was not patentable or operable. The holding of the District Judge, which was sustained on the former appeal, was that several claims of the patent, including that for the lubricator, were valid and infringed. Certiorari was denied by the Supreme Court in November, 1922, and upon the going down of the mandate of this court reference was made to a master for an accounting by Reed to the Hughes Tool Company.

The master found that during the accounting period it was the universal belief among those engaged in drilling wells that the use of oil as a lubricator of the drilling bits was essential, and that there was no market for any other type of rotary drills, but that at about the end of the accounting period it was discovered that rotary bits could be lubricated successfully by the downward pressure of slush water instead of oil. He further found that during the accounting period appellants sold complete bits and spare parts, consisting of cutters and infringing lubricators, to such an extent that, if they had been sold by appellee, it would have realized a profit of $198,086.84, as shown by reports of auditors, which by stipulation it had been agreed would be binding upon the parties, but that according to the same reports appellants had not made any profits. No testimony was offered before the master as to what would be a reasonable royalty on sales made by appellants, but he

adopted 15 per cent. as a reasonable royalty, because that was what Reed agreed to pay to the Caddo Company, and on that basis recommended a decree in favor of appellee for approximately $86,000.

He also found on the evidence before him that appellants were willful infringers, but recommended that the District Judge, if appellants so desired, should permit testimony showing that they acted on the advice of counsel, after making a full disclosure of all the facts known to them, so as to show they acted in good faith in infringing appellants' patent. The District Court heard additional evidence on the good faith of appellants, and a letter from their attorney was received in evidence, but it only advised appellants that the Hughes patent might be held invalid. The District Court rejected the theory of damages on a royalty basis, and, on the contrary, adopted the theory that appellee would have sold all the complete outfits and parts which appellants sold, and would have realized a profit of approximately $170,000 on such sales. To that he added interest, and by way of punishment for willful infringement assessed the cost of auditing the books of appellants, amounting to $10,555, and entered a decree in favor of appellee for $198,797.10.

It appears from the evidence that the manufacture and the sale of cutters was the chief enterprise of both appellants and appellee. It was not expected by either of them that the profits on the lubricators would be large, but that part of the rotary drill was designed to increase the sale of the cutters, as well as of the complete outfits. The manufacture of all the parts necessary for replacements in the Hughes bit was covered by patents owned by appellee, and it alone manufactured these parts. Appellants did not manufacture cutters to be used on Hughes bits, but only cutters which could be used on bits manufactured and sold by them.

On May 6, 1916, patent No. 1,302,967 was issued to Rowland O. Pickin on his application filed November 20, 1913. In the specifications Pickin describes a roller drill the cutters of which would be cooled and the entrance of dirt or sediment into the bearings prevented by the continuous flow of water under pressure. But it does not appear that that device had been successfully operated. Certainly it was unknown to Reed, and only discovered by a user of a Reed roller bit, while he was experimenting with the lubricator that infringes the Hughes patent.

At the time when the contract between the Caddo Company and Reed was entered into, Hughes owned 26 per cent. of the capital stock of that company. He never consented to the making of that contract. He later acquired the ownership of practically all the capital stock of the Caddo Company, and in its name brought two suits, one in Texas and the other in Louisiana, to cancel the contract, but was unsuccessful. About the time of the close of the accounting period in No. 4514, the Caddo Company, owned by Hughes, brought suit against Reed and his company to recover 15 per cent. royalty on all sales made under the 1917 contract between it and Reed, and recovered judgment for $186,535.28.

In No. 4514:

B. F. Louis, of Houston, Tex., and William F. Hall, of Washington, D. C., for appellants.

C. R. Wharton and John A. Mobley, both of Houston, Tex. (Jesse R. Stone, of Houston, Tex., on the brief), for appellee.

In No. 4615:

B. F. Louis, of Houston, Tex., and William F. Hall, of Washington, D. C., for plaintiffs in error.

John A. Mobley and W. L. Cook, both of Houston, Tex. (Jesse R. Stone, of Houston, Tex., on the brief), for defendant in error.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

BRYAN, Circuit Judge (after stating the facts as above). In the first of these cases, No. 4514, appellee's claim of infringement has already been upheld. 282 F. 807. [1] The only question before us is whether the damages awarded on an accounting are excessive. We have no difficulty in sustaining the finding of the master and the District Judge that the appellants were willful infringers. During the time he was an employee and officer of the appellee company, Reed must have had knowledge of the injunction obtained in 1913 against the Caddo Company restraining the use of the Hughes lubricator. After he left the employment of Hughes, and had been enjoined from infringing several of the Hughes patents, and after unsuccessfully attempting to compete by the use of an oil lubricator holding only a gallon of oil, he deliberately began and continued to manufacture and sell as an essential part of his machine a lubricator which infringed that of the Hughes patent.

[2] It is not contended that there was any substantial difference. It is apparent from the evidence that he was not led by the advice of counsel to believe that he would not be infringing if he should make use of the Hughes patents. Under R. S. § 4919, (Comp. St. § 9464), it was within the discretion of the court to assess the expense of auditors, as a punishment for infringement.

[3] Appellants contend that at most recovery should have been limited to the reasonable profits appellee would have made on sales of its lubricator, and that appellee was not entitled to recover loss of profits on complete outfits or spare parts, for the reason that they were not included in the Hughes patent. While it is true that nominally the Hughes patent was only for the improvement of drills, it was in reality an improved drill. Claim 19, quoted above, is for the completed tool and spare parts. Although some of the parts were old, the Hughes device as a whole was new. Manufacturing Co. v. Cowing, 105 U. S. 253, 26 L. Ed. 987. It was the lubricator that gave value to the completed device and made the cutters salable.

In Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 32 S. Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653, it is said: "Where profits are made by the use of an article patented as an entirety, the infringer is liable for all the profits 'unless he can show—and the burden is on him to show—that a portion of them is the result of some other thing used by him.'" See, also, Putnam v. Lomax (C. C.) 9 F. 448; Covert v. Sargent (C. C.) 38 F. 237; Pressed Prism Glass Co. v. Continuous Glass Prism Co. (C. C.) 181 F. 151; Bredin v. National Metal Co. (C. C.) 182 F. 654; Bemis v. Brill, 200 F. 749, 119 C. C. A. 229; Walker on Patents, § 565.

Dowagiac Mfg. Co. v. Minnesota Plow Co., 235 U. S. 641, 35 S. Ct. 221, 59 L. Ed. 398, relied on by appellants, does not announce a different rule. In that case the patent was for an improvement in grain drills, the objects being to make the drill usable on uneven ground, and to provide means whereby the shoes and covering wheels could be raised from the ground, when the implement was not in use or when it was being transported from one field to another. Other parts were required to complete the machine, and its value was not entirely attributable to the invention.

In Heyer v. Duplicator Mfg. Co., 263 U. S. 100, 44 S. Ct. 31, 68 L. Ed. 189, also relied on by appellants, the patentee sold his own device to purchasers who bought gelatine bands from the defendant. This case is distinguishable from that, for here appellants were not selling parts to those who had bought complete machines from appellee, but were selling spare parts of their own device, which could never have been sold, but for appellee's lubricator. Reed did not have a license to manufacture or sell spare parts of the Hughes drill, and therefore was an infringer, and liable for profits Hughes would have made. Union Tool Co. v. Wilson, 259 U. S. 107, 42 S. Ct. 427, 66 L. Ed. 848.

[4] It does not make any difference that the Pickin patent called for slush water, instead of oil, as a lubricator, for during the accounting period it was not known that such a device could enter into competition with the Hughes device. Turrill v. I. C. R. R. (C. C.) 20 F. 912; Brennan v. Dowagiac Mfg. Co., 162 F. 472, 89 C. C. A. 392. Reed does not claim that he knew there was another method of lubrication. His discovery came about as a result of his infringement, and not because of the existence of the Pickin patent.

[5] A patentee is bound by prior patents and the prior art, irrespective of his actual knowledge. R. S. § 4886 (Comp. St. § 9430). Because of this it is argued that an infringer can escape liability by showing that he might have chosen to use a competing device, if he had known of it, although as a matter of fact he was not aware of its existence. A patent is a contract, and the patentee does not acquire any rights previously granted by the government. Among the rights not granted are those that the government has theretofore conveyed, or that have been acquired by the public. Actual knowledge by a patentee of those rights is immaterial.

There is no contract relation between a patentee and an infringer, but the latter is invading property rights acquired by the former from the government, and therefore is liable for damages. Such damages are not affected by a showing of the existence of a state of facts which, so far as the parties are concerned, might as well have had no existence. During the accounting period the Pickin patent was unknown to Reed, and during that period Hughes was deprived of profits he otherwise would have made. We are of opinion that the award of damages by the District Court was sustained by the evidence.

[6-8] In No. 4615, defendants do not deny that the judgment correctly represents the royalty interest of plaintiff, but they contend that the court should have sustained their pleas of set-off, and allowed them credit for the expenses and fees of attorneys incurred in defending the two suits brought to cancel the royalty contract, and in defending the infringement suit in the appellate courts after final decree of infringement by the District Court, and also for the amount awarded on accounting in the infringement suit. The opinion of the District Court before whom the case was tried without a jury is reported in 4 F. (2d) 136.

Paragraph 5 of the royalty contract provides that the Caddo Company would defend any actions and afford protection from infringement of the patent; but it did not undertake to protect Reed against suits brought by the Caddo Company itself in the protection of its own interests. The District Court allowed the expenses and attorney's fees incurred in No. 4514 up to the final decree of infringement of that court, because some of the claims of infringement of the Hughes patents were rejected. The refusal to allow expenses and fees of attorneys incurred on appeal was clearly right, as the royalty contract did not authorize Reed to engage in the infringement of other patents. Defendants did not acquire any right from plaintiff to use the lubricator of the Hughes patent.

The right to set off the decree in 4514 against plaintiff's claim for 15 per cent. of the sales under his contract with Reed is based upon the proposition that Hughes is the owner of all the stock in the plaintiff corporation and in the Hughes Tool Company, and to allow both judgments to stand would be to permit him to reap a double benefit. It is to be remembered that Hughes never consented to the royalty contract, and that he attempted to have it canceled after he was in position to control the actions of the Caddo Company. In addition, the plaintiff company as such has the right to recover what is legally due to it, and that right is not to be taken away merely because Hughes as an individual would derive benefits which he is entitled to by reason of his ownership of stock for which presumably he paid full value.

The amounts awarded in these two suits are large, but, as it clearly appears that

Reed and his company made themselves liable in spite of all efforts to stop them, it is but just that they should be held responsible.

The decree in No. 4514 is affirmed.

The judgment in No. 4615 is affirmed.