Opinion for the court filed by Circuit Judge PROST, in which RADER, Chief Judge, NEWMAN, LOURIE, and DYK, Circuit Judges join. MOORE, Circuit Judge joins Part I of the opinion.
Opinion concurring-in-part and dissenting-in-part filed by MOORE, Circuit Judge.
*1308 Opinion concurring-in-part and dissenting-in-part filed by REYNA, Circuit Judge.
Dissenting opinion filed by O’MALLEY, Circuit Judge, in which WALLACH, Circuit Judge joins.
PROST, Circuit Judge.
We sua sponte took this case en banc to answer two questions. First, does 28 U.S.C. § 1292(c)(2) confer jurisdiction on this court to entertain appeals from patent infringement liability determinations when a trial on damages has not yet occurred? Second, does 28 U.S.C. § 1292(e)(2) confer jurisdiction on this court to entertain appeals from patent infringement liability determinations when willfulness issues are outstanding and remain undecided? We answer both questions in the affirmative and return the case to the panel for disposition on the merits.
BACKGROUND
In August 2008, Robert Bosch, LLC (“Bosch”) sued Pylon Manufacturing Corp. (“Pylon”) for patent infringement. Pylon later asserted patent infringement counterclaims against Bosch. During the pretrial period, Pylon filed a motion requesting that the district court bifurcate the issues of liability and damages. In ruling on the motion, the district court stated that “bifurcation is appropriate, if not necessary, in all but exceptional patent cases,” and issues related to a damages trial are “a drain on scarce judicial resources.” Robert Bosch LLC v. Pylon Mfg. Corp., 1:08-CV-542, slip op. at 1 (D.Del. Aug. 26, 2009) (“Memorandum Opinion”). With respect to willfulness, the court determined that “willfulness is a damages issue, not a liability issue,” and willfulness “requires qualitatively and quantitatively different proof than does infringement.” Memorandum Opinion at 3. Accordingly, the district court granted the motion and stayed discovery on damages issues including willfulness. As of this writing, proceedings on damages issues remain stayed in the district court.
Following a jury trial on liability and motions for judgment as a matter of law, the district court entered judgment on the liability issues. Bosch appealed and Pylon cross-appealed. Bosch filed a motion to dismiss both its appeal and Pylon’s cross-appeal on the grounds that we lack jurisdiction, which this court denied. Bosch sought reconsideration of its motion, which was also denied. On July 9, 2012, the parties argued the substantive as well as jurisdictional issues before a panel of this court. After oral argument, we sua sponte granted a rehearing en banc to determine whether we have jurisdiction over this appeal under 28 U.S.C. § 1292(c)(2).
DISCUSSION
This court’s jurisdiction is governed by the final judgment rule. See, e.g., 28 U.S.C. § 1295(a)(1) (granting this court jurisdiction over any “appeal from a final decision of a district court of the United States ... in any civil action arising under ... any Act of Congress relating to patents”). Under the final judgment rule, a party may not take an appeal “until there has been a decision by the district court that ends the[1] litigation on the merits and leaves nothing for the court to do but execute the judgment.” Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981) (citations omitted). There are, however, exceptions to the final judgment rule. For instance, § 1292(c)(2) provides one such exception, which is unique to patent cases. Under § 1292(c)(2), an appeal to this court may be made “from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an account *1309 ing.” The disposition of this case turns on the meaning of “accounting,” specifically, whether a trial on damages and willfulness is an accounting for the purposes of § 1292(c)(2).
I
In addressing the question of whether we have jurisdiction to entertain an appeal when a trial on damages has not yet occurred, we first consider the issue of whether an accounting includes the determination of a patentee’s damages. We then consider whether an accounting may include a trial on damages or whether it is limited to proceedings before a special master. With respect to the first issue, Bosch presses the argument that an accounting under § 1292(c)(2) is limited to an. accounting of an infringer’s profits and cannot include a determination of damages. We cannot agree with Bosch. It is clear from the case law and the history of the statute that an accounting includes both the determination of an infringer’s profits as well as a patentee’s damages. Bosch also argues that whatever an accounting is, it cannot be a trial on damages. Again, we disagree. We find that neither the text nor the history of the statute supports this narrow interpretation. Rather, an “accounting” within the meaning of § 1292(c)(2) may include a trial on damages.
A
In accordance with established precedent, we begin our inquiry by ascertaining the historical meaning of an “accounting.”
It is a well-established rule of construction that “ ‘[wjhere Congress uses terms that have accumulated settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms.’ ” Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (quoting Community for Creative Non-Violence v. Reid, 490 U.S. 730, 739, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)); see Standard Oil Co. of N. J. v. United States, 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619 (1911) (“[Wjhere words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense”).
Neder v. United States, 527 U.S. 1, 21-22, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); see also Microsoft Corp. v. 141 Ltd. P’ship, — U.S. -, 131 S.Ct. 2238, 2246, 180 L.Ed.2d 131 (2011) (reiterating this principle of statutory construction). Bosch argues that historically an accounting included only the ascertainment of an infringer’s profits, while Pylon argues that an accounting included a trial on damages, including the determination of willfulness.
It is true, as Bosch contends, that the meaning of accounting in patent cases once referred only to the equitable accounting of an adjudged infringer’s profits.[1] In 1853, the Supreme Court in Livingston v. Woodworth examined the traditional accounting proceeding and held that damages could not be awarded in an equitable accounting. 56 U.S. 546, 560, 15 How. 546, 14 L.Ed. 809 (1853). The special master in Livingston admitted “that the account [was] not constructed upon the basis of actual gains and profits acquired by the defendants by the use of the inhibited machine, but upon the theory of awarding damages to the complainants for an in *1310 fringement of their monopoly.” Id. at 559. The special master found that the defendants were “trespassers and wrongdoers, in the legal sense” and “double[d] the amount which he had stated to be a compensation to the plaintiffs.” Id. The Livingston Court found this improper, stating, “[w]e are aware of no rule which converts a court of equity into an instrument for the punishment of simple torts.” Id. The Court questioned whether “the infliction of damages, by way of penalty, [was] ever consistent with the practice of courts of equity” and, accordingly, limited the accounting “to the actual gains and profits of the [infringers].” Id. at 560.
It bears mention that these historical accountings were very much true to their name in that they generally applied accountancy principles to ascertain the actual profits of an adjudged infringer. The case of Providence Rubber Co. v. Goodyear illustrates this point. 76 U.S. 788, 9 Wall. 788, 19 L.Ed. 566 (1869). In that case, “[t]he Circuit Court decreed that the Providence Company was liable ‘for all the profits made in violation of the rights of the complainants, under the patent aforesaid, by respondents, by the manufacture, use, or sale of any of the articles named in said bill.’ ” Id. at 801-02. The Court found that “[t]his was in accordance with the rule in equity cases established by this court.” Id. at 801 (citing Livingston v. Woodworth, 56 U.S. 546, 15 How. 546, 14 L.Ed. 809 (1853)). Justice Swayne, writing for the Court, went on to describe an accounting in detail, stating:
The profits made in violation of the rights of the complainants’ in this class of cases, within the meaning of the law, are to be computed and ascertained by finding the difference between cost and yield. In estimating the cost, the elements of price of materials, interest, expenses of manufacture and sale, and other necessary expenditures, if there by any, and bad debts, are to be taken into the account, and usually nothing else. The calculation is to be made as a manufacturer calculates the profits of his business. ‘Profit’ is the gain made upon any business or investment, when both the receipts and payments are taken into the account.
Id. at 804.
Hence, at least from 1853, an accounting applied basic accountancy principles and did not include the calculation of damages, but rather was restricted “to the actual gains and profits of the [infringers].” Livingston, 56 U.S. at 560. The rule of Livingston was, however, short lived.
Congress nullified this aspect of Livingston in the 1870 Patent Act by authorizing the award of damages by a court sitting in equity. Act of July 8, 1870, Ch. 230, § 55, 16 Stat. 201 (“[T]he claimant [complainant] shall be entitled to recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby....”). Following the 1870 Patent Act, courts regularly used the terms “account” and “accounting” to refer to the special master’s determination of both an adjudged infringer’s profits and a patentee’s damages. See, e.g., Cornely v. Marckwald, 131 U.S. 159, 160, 9 S.Ct. 744, 33 L.Ed. 117 (1889) (referring to the district court’s “ordering a reference to a master to take an account of profits and damages”); Smith v. Vulcan Iron Works, 165 U.S. 518, 524, 17 S.Ct. 407, 41 L.Ed. 810 (1897) (upholding the ability of adjudicated infringer to take immediate appeal from an injunction prior to special master’s “account of profits and damages”); Henry v. A.B. Dick Co., 224 U.S. 1, 41, 32 S.Ct. 364, 56 L.Ed. 645 (1912) (referring to “an accounting for damages for past infringement” in a patent case); Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co., 225 U.S. 604, 608, 32 S.Ct. 691, 56 L.Ed. 1222 (1912) (“The case was therefore *1311 referred to a master to state an account of damages and profits.... ”); Lovell-McConnell Mfg. Co. v. Automobile Supply Mfg. Co., 235 U.S. 383, 386, 35 S.Ct. 132, 59 L.Ed. 282 (1914) (referring to “an accounting for damages and profits” in a patent case); Yesbera v. Hardesty Mfg. Co., 166 F. 120, 121 (6th Cir.1908) ('“[A] reference to the master to take an account of profits and damages was included in the decree.”); Andrews v. Creegan, 7 F. 477, 478 (C.C.S.D.N.Y.1881) (“[T]he act of 1870 (Rev. St. Sec. 4921) provides for an accounting for damages as well as profits, and there may be damages to be accounted for in this case.”). Accordingly, after 1870, an accounting included both the determination of a patentee’s damages as well as an adjudged infringer’s profits.
We note that, during this period, the calculation of a patentee’s damages as part of an accounting included lost profits due to diversion of sales or due to price erosion. See Cornely, 131 U.S. at 160-61, 9 S.Ct. 744. Likewise, a patentee could also prove its damages by showing established royalties. Rude v. Westcott, 130 U.S. 152, 165, 9 S.Ct. 463, 32 L.Ed. 888 (1889) (“It is undoubtedly true that where there has been such a number of sales by a patentee of licenses to make, use, and sell his patents as to establish a regular price for a license, that price may be taken as a measure of damages against infringers.”).
An accounting at this time, however, did not allow for the award of a reasonable royalty as the measure of a patentee’s damages. In Rude v. Westcott, the Court rejected the award of a “conjectural” royalty as part of an accounting, stating:
“Actual damages must be calculated, not imagined, and an arithmetical calculation cannot be made without certain data on which to make it.” There was no question in this case of damages arising from lost sales, or injurious competition, for no machines had been manufactured and put on the market by the patentee, or by the complainants, his assignees. No legal ground being shown for the recovery-of specific damages for the alleged infringement of the patents, the decree must be reversed.
Id. at 167, 9 S.Ct. 463 (quoting Mayor, Aldermen & Commonalty of City of New York v. Ransom, 64 U.S. 487, 488, 23 How. 487, 16 L.Ed. 515 (1859)); see also Coupe v. Royer, 155 U.S. 565, 583, 15 S.Ct. 199, 39 L.Ed. 263 (1895). This rule created some mischief because actual damages were then, as they are now, often difficult to prove. Eventually, the courts Of appeals began to allow the calculation of a reasonable royalty as part of an accounting. See U.S. Frumentum Co. v. Lauhoff, 216 F. 610, 625 (6th Cir.1914) (“[A] ‘reasonable royalty,’ if the proper foundation is laid and if the primary measures cannot be adopted, may become the applicable criterion in an action at law. If this is true, the same result follows before a master in determining damages in an action in equity.”). This practice was ultimately sanctioned by the Supreme Court in Dowagiac Manufacturing Co. v. Minnesota Moline Plow Co., 235 U.S. 641, 648-50, 35 S.Ct. 221, 59 L.Ed. 398 (1915). In 1922, Congress expressly allowed for a reasonable royalty to be awarded in a case in equity by amending the statute to state “the court may adjudge and decree the payment by the defendant to the complainant of a reasonable sum as profits or general damages for the infringement.” Act of Feb. 21, 1922, Ch. 58, 42 Stat. 392. Accordingly, as early as 1922, Congress had allowed for an accounting to include the determination of an adjudged infringer’s profits and a patentee.^ damages, including lost profits and a reasonable royalty.
It was against this backdrop that Congress, in 1927, enacted the predecessor statute to § 1292(c)(2) — 28 U.S.C. § 227a — to confer interlocutory appellate *1312 jurisdiction over patent infringement judgments that were final except for “an accounting.” The original statute provided that, “when in any suit in equity for the infringement of letters patent for inventions, a decree is rendered which is final except for the ordering of an accounting, an appeal may be taken from such decree to the circuit court of appeals.” 28 U.S.C. § 227a (1927). The Senate Report accompanying § 227a indicates that Congress understood an “accounting” to include both the calculation of the defendant’s profits and the plaintiffs damages:
Under the present statutes where an equity suit for infringement of letters patent results in a decree for the plaintiff, if the patent at the time of entry of the decree is still alive, the court orders an injunction to restrain further infringement and refers the cause to a master to ascertain plaintiffs damages and defendant’s profits. Upon the entry of such a decree an appeal from the order granting the injunction may be taken immediately, and it is the general practice to suspend all proceedings under the accounting until the court of appeals has determined the questions of validity of the patent and infringement. If the court holds against the plaintiff on either of these questions, it reverses the decree of the lower court, and there is, of course, no accounting.
S.Rep. No. 69-1319, at 1 (1927). Thus, Congress gave the term “accounting” its judicially settled meaning (i.e., proceedings before a special master to determine the infringer’s profits and the plaintiffs damages) when it enacted § 227a.
After the enactment of § 227a, the Supreme Court consistently referred to an accounting as a proceeding that includes the determination of both profits and damages. See McCullough v. Kammerer Corp., 331 U.S. 96, 97, 67 S.Ct. 1165, 91 L.Ed. 1365 (1947) (recounting that the district court ordered “[a]n accounting for profits and damages”); Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 650, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983) (stating that the case was “referred to a [s]pecial [m]aster for an accounting,” and that the special master “selected a royalty rate by reference to hypothetical negotiations that it found would have taken place if GMC had sought to obtain a license from Devex”) (citations omitted); Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 336 U.S. 271, 276, 69 S.Ct. 535, 93 L.Ed. 672 (1949) (noting that the district court “concluded that the respondent was entitled to ... an accounting for profits and damages”); Edward Katzinger Co. v. Chi. Metallic Mfg. Co., 329 U.S. 394, 398, 67 S.Ct. 416, 91 L.Ed. 374 (1947) (stating that the district court “ordered an accounting to determine royalties due for the period prior to termination of the license contract, and for infringement damages thereafter”). Prior to the creation of this court, the regional courts of appeals also recognized that an accounting included the calculation of damages. See, e.g., Russell Box Co. v. Grant Paper Box Co., 179 F.2d 785, 787 (1st Cir.1950); Maxon Premix Burner Co. v. Eclipse Fuel Eng’g Co., 471 F.2d 308, 313 n. 6 (7th Cir.1972); Miller Hatcheries v. Buckeye Incubator Co., 41 F.2d 619, 620 (8th Cir.1930); Icyclair, Inc., v. Dist. Court of U.S. for S. Dist. of Cal., Cent. Din, 93 F.2d 625, 626 (9th Cir.1937). Finally, this court has likewise repeatedly recognized that an accounting includes the determination of damages. See, e.g., Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1343 n. 2 (Fed.Cir.2001) (“ ‘Accounting,’ as used in the statute, refers to infringement damages pursuant to 35 U.S.C. § 284.”); H.A. Jones Co., Inc. v. KSM Fastening Sys., Inc., 745 F.2d 630, 631 (Fed.Cir.1984) (finding that “the judgment is final except for an accounting of damages at a later date”) (citations omitted).
*1313 The statute’s interpretation through history is clear. An “accounting” in the context of § 1292(c)(2) includes the determination of damages and cannot-be limited to a traditional equitable accounting of an infringer’s profits. In 1927, when Congress first employed the term “accounting” in the context now at issue, an accounting was well-known to include both the calculation of an infringer’s profits and a patentee’s damages. Accordingly, we must conclude that an accounting as used in § 1292(c)(2) includes both determinations. See Standard Oil Co. of N.J., 221 U.S. at 59, 31 S.Ct. 502.
B
We have established that an accounting includes the calculation of damages, but our inquiry is not yet finished. Bosch further maintains that even if an accounting includes the determination of damages, it cannot be a trial on damages, but rather an accounting must be limited to a special master’s determination of damages. According to Bosch, an accounting was a proceeding before a special master — available only in courts of equity— and because juries do not sit in equity, an accounting may not include a modern jury trial on damages. While we agree with Bosch that an accounting was historically available in equity, we do not agree that a trial on damages falls outside the scope of the accounting described in § 1292(c)(2).
We base our conclusion on four points. First, in 1948, Congress expanded jurisdiction over interlocutory appeals from cases in equity to “civil actions for patent infringement which are final except for accounting.” Second, the issues which were historically decided in accountings are the same as those decided during damages trials today. Third, the reasons articulated by Congress for allowing interlocutory appellate jurisdiction over patent cases that are final except for an accounting apply with equal force to a modern damages trial. Finally, stare decisis militates in favor of allowing interlocutory appeals where liability has been established and a damages trial remains.
1
Prior to the merger of law and equity in 1938, an accounting for an infringer’s profits and a patentee’s damages was available in the courts of equity. See, e.g., Act of July 8, 1870, Ch. 230, § 55, 16 Stat. 201 (“[Ujpon bill in equity filed by any party aggrieved ... the claimant [complainant] shall be entitled to Recover, in addition to the profits to be accounted for by the defendant, the damages the complainant has sustained thereby....”). In 1946, however, Congress removed the remedy of the infringer’s profits and ended the practice of requiring a traditional accounting of an infringer’s profits before a special master. The amended statute provided that “the complainant shall be entitled to recover general damages which shall be due compensation for making, using, or selling the invention, not less than a reasonable royalty therefor.” Act of August 1, 1946, Ch. 726, 60 Stat. 778, 35 U.S.C. § 70. The legislative history of the amendment indicates that its purpose was to eliminate the necessity of hearings before special masters. The Congressional report states:
The object of the bill is to make the basis of recovery in patent-infringement suits general damages, that is, any damages the complainant can prove, not less than a reasonable royalty, together with interest from the time infringement occurred, rather than profits and damages .... Although the bill would not preclude the recovery of profits as an element of damages, yet by making it unnecessary to have proceedings before masters and empowering equity courts to assess general damages irrespective of profits, the measure represents legis *1314 lation which in the judgment of the committee is long overdue.
See, e.g., H.R.Rep. No. 1587, 79th Cong., 2d Sess. (1946), adopted as the report of the Senate Committee on Patents, S.Rep. No. 1503, 79th Cong., 2d Sess. (1946), at 2; reprinted in U.S. Code Congressional Service (1946) at 1386-87; see also Kori Corp. v. Wilco Marsh Buggies & Draglines, Inc., 761 F.2d 649, 654 (Fed.Cir.1985) (“The legislative history of the 1946 amendments clearly indicates that one of its purposes was to eliminate the necessity of the traditional accounting to determine the infringer’s profits in all damages determinations, and to deter the use of such proceedings by successful patentees to harass the in-fringer.”).
After the merger of law and equity, and the 1946 revision to the damages statute, Congress amended the interlocutory appeal statute by substituting the phrase “civil actions” for the phrase “suit[s] in equity.” H.R. Rep. 308, 80th Cong., 1st Sess. (1948). That change placed the statute in essentially its current form: “The courts of appeals shall have jurisdiction of appeals from.... Judgments in civil actions for patent infringement which are final except for accounting.” 28 U.S.C. § 1292(4) (1948). Accordingly, despite having eliminated the possibility of recovering an infringer’s profits, making it unnecessary to have proceedings before a special master, in 1948, rather than eliminate § 1292’s exception to the final judgment rule, Congress extended it to civil actions.
The dissent suggests that the “accounting” referred to in § 1292 identifies not the nature of the issue being adjudicated but the identity of the adjudicator. In the dissent’s view, an “accounting” can only be conducted by a special master in equity, and only such proceedings constitute an “accounting” within the meaning of the statute; a damages proceeding before a jury cannot qualify as an accounting. See J. O’Malley Dissenting Op. 1336-37.
Section 1292 makes no such distinction between a jury trial on damages and an “accounting.” It is manifestly incorrect to read such a distinction into the statute. The Supreme Court’s decision in Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), underscores the point that after the merger of law and equity, the similarity between equitable accountings in infringement cases and traditional damages calculations meant that even if a proceeding was, in the traditional sense, an equitable accounting, a jury trial was nonetheless required. See Dairy Queen, 369 U.S. at 477-79, 82 S.Ct. 894. The fact that a jury trial was required did not change the nature of the proceeding from an “accounting” to something else entirely, however. See id. at 479, 82 S.Ct. 894 (“The legal remedy [provided by the jury] cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner’s business records.”). This point is reinforced by the concurring opinion of Justices Harlan and Douglas, who noted explicitly that the jury right attached even though the only “ ‘legal’ claim contained in the complaint” was in fact an “ ‘equitable’ ” claim for “an accounting for alleged trademark infringement.” Id. at 480-81, 82 S.Ct. 894 (Harlan, J., concurring). As Wright and Miller note, “ordinarily there is [after Dairy Queen ] a right to jury trial on a claim for an accounting.” 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2312, at 164 (3d ed.2008). Thus, the fact that juries must now determine patent damages does not prevent those proceedings from being “accountings” within the meaning of § 1292.
This is exactly the point of the 1948 amendment to subsection 1292(c)(2), which *1315 recognized that after the merger of law and equity, an accounting remains an accounting, regardless of the form of the civil action. There is simply no basis for concluding, as the dissent suggests, that Congress in 1948 “narrowed” the scope of subsection 1292(c)(2) to cover only those rare cases in which an accounting could be had before a special master without a jury trial. See J. O’Malley Dissenting Op. 1838.
It is clear that Congress sought to eliminate the traditional equitable remedy of an accounting of an infringer’s profits, obviating the need for an equitable accounting before a special master.[2] It is likewise clear that Congress intended interlocutory review of cases that are final except for an accounting to remain available. Indeed, interlocutory review of cases that are final except for an accounting was to be available not only in suits in equity, but in civil actions generally. Accordingly, we conclude that the meaning of an “accounting” in § 1292 includes a damages trial.[3]
2
As detailed supra, from at least 1922 forward, Congress authorized the determination of an adjudged infringer’s profits and a patentee’s damages, including lost profits and a reasonable royalty, as part of an accounting proceeding. In 1946, Congress eliminated recovery of an adjudged infringer’s profits, “making it unnecessary to have proceedings before masters and empowering equity courts to assess general damages irrespective of profits.” S.Rep. No. 1503, 79th Cong., 2d Sess., at 2 (1946). In 1952, Congress combined the equitable and legal remedies provisions of the statute with the creation of 35 U.S.C. § 284.[4] Section 284 states that “[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the in-fringer. ...” Thus, were a traditional accounting proceeding before a special master to be held to determine an appropriate *1316 remedy under § 284, it would include the determination of a patentee’s damages including lost profits or a reasonable royalty, but not the determination of an adjudged infringer’s profits. These are the same determinations that are made in a modern damages trial. The fact that whether damages are determined by a master or a jury, the same issues would be decided, supports the position that a modern damages trial may be considered an accounting for the purposes of § 1292(c)(2).
3
Congress first passed the predecessor statute to § 1292(c)(2) because of the high cost of an “accounting.” The House Report that accompanies the 1927 amendment states:
[Legislation of this nature is needed to prevent a great burden of expense to litigants in actions to determine the validity of patents, where an accounting is involved. Under present procedure appeals may be taken from the interlocutory decree upholding the patent but not until a full accounting has been made to the court. Under this bill such appeal can be taken from such interlocutory decree ... so as to obviate the cost of an accounting in the event the case is reversed on appeal.
H.R.Rep. No. 1890, 69th Cong., 2d Sess. 1 (1927). The Senate Report underscored this concern stating, “the whole expense of the accounting is wasted” when an appellate court reverses on liability after an accounting. S.Rep. No. 1319, 69th Cong. 2d Sess. (1927); see also McCullough, 331 U.S. at 98, 67 S.Ct. 1165.
This issue remains relevant today. Modern patent damages trials, with their attendant discovery, are notoriously complex and expensive. As the district court put it, “discovery disputes related to document production on damages and the Dau-bert motion practice related to damages experts are a drain on scarce judicial resources.” Memorandum Opinion at 1. Given the substantial reversal rate of liability determinations on appeal, the whole expense of a damages trial is often wasted. Accordingly, those policy concerns that motivated Congress to grant jurisdiction over cases that are final except for an accounting support our holding today.
4
The principle of stare decisis likewise weighs in favor of our holding. To be sure, because the question we consider today has not previously been considered by this court sitting en banc, “the implications of stare decisis are less weighty than if we were [reconsidering] a precedent established by the court en banc.” See McKinney v. Pate, 20 F.3d 1550, 1565 n. 21 (11th Cir.1994) (en banc); see also United States v. Bailey, 36 F.3d 106, 110 (D.C.Cir.1994) (en banc) (citing McKinney), rev’d on other grounds, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Indeed, “[t]he province and obligation of the en banc court is to review the current validity of challenged prior decisions.” United States v. Aguon, 851 F.2d 1158, 1167 n. 5 (9th Cir.1988) (en banc), rev’d on other grounds, Evans v. United States, 504 U.S. 255, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992); see also United States v. Anderson, 885 F.2d 1248, 1255 (5th Cir.1989) (en banc). Nonetheless, “because [our precedent] represents the established law of the circuit, a due regard for the value of stability in the law requires that we have good and sufficient reason to reject it at this late date.” Bailey, 36 F.3d at 110. Indeed, panel opinions, like en banc opinions, invoke the principle of stare decisis. Panel opinions are, of course, opinions of the court and may only be changed by the court sitting en banc. It has been the law of this court for at least twenty-five years that an “accounting” un *1317 der § 1292 includes a trial for the determination of damages under § 284. See, e.g., In re Calmar, Inc., 854 F.2d 461, 464 (Fed.Cir.1988) (“Hence it is clear that the purpose of the legislation, § 1292(c)(2), allowing interlocutory appeals in patent cases was to permit a stay of a damages trial.”); Trans-World Mfg. Corp. v. Al Nyman & Sons, Inc., 750 F.2d 1552, 1558 (Fed.Cir.1984) (following a jury verdict that did not reach the question of damages, “[t]he court entered a judgment, final except for an accounting, that the '497 patent was ‘invalid, void and unenforceable,’ and that the '099 patent was valid and infringed.... [The court] ordered a new trial to determine the damages from infringement of the '099 patent, but postponed such trial pending this appeal.”); Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1343 n. 2 (Fed.Cir.2001) (“ ‘Accounting,’ as used in the statute, refers to infringement damages pursuant to 35 U.S.C. § 284.”); Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C., 482 F.3d 1347, 1353 (Fed. Cir.2007) (“Since the district court’s infringement judgment is final as to all issues except for a determination of damages, we have jurisdiction under 28 U.S.C. § 1292(c)(2).”); Callaway Golf Co. v. Acushnet Co., 576 F.3d 1331, 1337 (Fed. Cir.2009) (after a jury trial, “the court entered judgment tracking the jury’s verdict. Trial on willfulness and damages was stayed.... [W]e have jurisdiction under 28 U.S.C. § 1292(c)(1) and (2).”).
We do not take our precedent lightly. As the Supreme Court stated, “stare deci-sis in respect to statutory interpretation has ‘special force,’ for ‘Congress remains free to alter what we have done.’ ” John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 139, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008) (citing Patterson v. McLean Credit Union, 491 U.S. 164, 172-73, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)). This court has long recognized that an “accounting” within the context of § 1292(c)(2) includes a trial on damages. Bosch’s exhortations notwithstanding, we decline to depart from that interpretation now.
Nothing in the text or history of the statute, or in the case law, militates that we adopt Bosch’s narrow interpretation of the statute. Rather, the statute, its history and policy as well as settled case law indicate — and we now hold — that § 1292(c)(2) confers jurisdiction on this court to entertain appeals from patent infringement liability determinations when a trial on damages has not yet occurred.
II
We also took this case en banc to determine whether § 1292(c)(2) confers jurisdiction on this court to entertain appeals from patent infringement liability determinations when willfulness issues are outstanding and remain undecided. We hold now that it does.
In bifurcating willfulness from the liability trial, the district court found that willfulness “requires qualitatively and quantitatively different proof than does infringement.” Memorandum Opinion at 3. The parties and the amici dispute the propriety of the court’s action. While we agree with the district court that willfulness and infringement present different underlying issues and, at least generally speaking, require different proof, the disposition of this case does not turn on the interrelatedness of the willfulness and infringement issues.
Given the nature of the arguments made by the parties and the amici, we take a moment to explain what this case is not about. This case does not involve the question of whether the district court has the authority to bifurcate the willfulness and infringement issues. As a general *1318 matter, it does. See Fed.R.Civ.P. 42(b). Likewise, we did not take this case en banc to determine whether the issues of infringement and willfulness are so interwoven that trying them separately violates the Seventh Amendment. Precedent of this court, nonetheless, indicates that it does not. See Voda v. Cordis Corp., 536 F.3d 1311, 1329 (Fed.Cir.2008). Rather, we took this case en banc to determine whether we have jurisdiction when willfulness issues are outstanding and remain undecided. Bifurcation and Seventh Amendment issues are immaterial to this inquiry. Our jurisdiction is set by Congress and Congress has given us jurisdiction over patent cases that are final except for an accounting. Accordingly, the disposition of this issue turns on whether an “accounting” as described in § 1292(c)(2) includes the determination of willfulness.
As always, we begin with the statute. “[Wjhere words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense.” Standard Oil Co. of N.J., 221 U.S. at 59, 31 S.Ct. 502. Our inquiry begins and ends with a determination of the historical meaning of an “accounting.” Specifically, we must determine whether at the time the statute was passed, an accounting included the determination of willfulness.
Long before the enactment of § 1292(e)(2)’s predecessor statute in 1927, accounting proceedings included the determination of willfulness by a special master. See, e.g., Cornely, 131 U.S. at 160, 9 S.Ct. 744 (“There was an interlocutory decree ... ordering a reference to a master to take an account of profits and damages. The master reported that the defendant had made a profit of $142.92, by the sale of 26 infringing machines, and that he was not a willful and deliberate infringer.”); Boesch v. Graff, 133 U.S. 697, 699, 10 S.Ct. 378, 33 L.Ed. 787 (1890) (“After a hearing on the merits, an interlocutory decree was entered, finding an infringment, and referring the case to a master for an accounting. ... The case then went to the master, who reported that the infringement was willful, wanton, and persistent....”); Pollock v. Martin Gauge Co., 261 F. 201, 202 (7th Cir.1919) (“The statute (section 9464, U.S. Comp. Stats. 1916) provides for the punishment of the willful violator. But whether damages in excess of the compensatory damages shall be awarded, as well as the amount thereof, must be determined by the District Court upon the accounting.”); K.W. Ignition Co. v. Temco Elec. Motor Co., 283 F. 873, 874 (6th Cir.1922) (“On the accounting the master found that the profits resulting to defendant from its infringement amounted to $164,431.54.... The master further recommended an award of punitive damages by reason of the ‘willful and malicious conduct of the defendants.’ The court increased the master’s award by adding $50,000 for punitive damages.... ”); Reed Roller Bit Co. v. Hughes Tool Co., 12 F.2d 207, 209 (5th Cir.1926) (as part of an accounting, the special master “found on the evidence before him that appellants were willful in-fringers”).
Bosch is unable to point to anything in the text of the statute or in the legislative history that would indicate that when Congress first gave the courts of appeals interlocutory jurisdiction over cases that are final except for an accounting, it intended to disturb the practice of determining willfulness as part of an accounting. Indeed, after the enactment of § 1292(c)(2)’s predecessor statute in 1927, courts continued to determine willfulness as part of an accounting, which occurred after the finding of liability. For example, in Pyle National Co. v. Lewin, the district court held the patents valid and infringed, and awarded treble damages prior to conducting an ac *1319 counting. 92 F.2d 628, 629, 631 (7th Cir. 1937). An appeal was then taken to the Seventh Circuit prior to the accounting. The Seventh Circuit reversed the district court’s finding with respect to treble damages, stating:
Whether the court was justified in awarding treble damages as torthe [pat-entee] prior to an accounting of damages and profits to be stated by a master presents a question not free from doubt. While we are unable to find any case where the question has been directly passed upon, yet it seems to be the universal practice for the District Court to make such determination only after the amount and character of the damages have been stated. A reading of section 70, title 36, U.S.C.A., indicates this to be the proper procedure. It will be noted the section authorizes the court to grant injunctions, direct an accounting of profits by the defendant, and assess damages which the complainant has sustained. This may be done, of course, by reference to a master. Afterwards in the same section is found the authority to increase such damages. We are of the opinion that such increase should not be allowed until after an accounting has been had.
Id. at 631. Other post-1927 cases confirm that willfulness may be tried as part of an accounting under § 1292(c)(2). See Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 66 F.2d 361 (2d Cir.1933) (affirming enhanced damage award based on master’s findings that infringement was willful). The Ninth Circuit summarized these cases in Patterson-Ballagh Corp. v. Moss, stating:
The reason for allowing appeals in patent infringement eases from interlocutory orders under [a predecessor to § 1292(c)(2) ] is to prevent useless waste of time and money for an accounting where a patent has been improperly held valid and infringed by a lower court. Determination of ancillary questions relating to the scope of damages, attorneys’ fees and willful infringement can well await final judgment. A number of cases have established the proposition that it is permissible for the District Court to determine the question of willful infringement subsequent to the report of the Master rather than in the earlier proceedings upon the issues of validity and infringement. For example, New England Fibre Blanket Co. v. Portland Telegram, 9 Cir., 1932, 61 F.2d 648, certiorari denied, 289 U.S. 752, 53 S.Ct. 696, 77 L.Ed. 1497; [Pyle] Nat. Co. v. Lewin, 7 Cir., 1937, 92 F.2d 628; Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 2 Cir., 1933, 66 F.2d 361, certiorari denied 290 U.S. 681, 54 S.Ct. 119, 78 L.Ed. 587; Anchor Hocking Glass Corp. v. White Cap Co., D.C. Del. [D.Del.] 1942, 47 F.Supp. 451; Utah Radio Products Co. v. Delco Appliance Corp., D.C.W.D.N.Y. 1938, 24 F.Supp. 328.
201 F.2d 403, 408 (9th Cir.1953).
In view of the foregoing, it is clear that an accounting, both prior to and after Congress’s grant of interlocutory jurisdiction over cases that are final except for an accounting, included the determination of willfulness. We are in no position to change that well settled meaning now. Accordingly, we hold that § 1292(c)(2) confers jurisdiction on this court to entertain appeals from patent infringement liability determinations when willfulness issues are outstanding and remain undecided.
Finally, we wish to make clear that district courts, in their discretion, may bifurcate willfulness and damages issues from liability issues in any given case. District courts have the authority to try these issues together or separately just as they have the authority to try all issues together at the liability stage. They may *1320 decide, for example, for reasons of efficiency due to the commonality of witnesses or issues in any particular case, that bifurcation is not warranted. . District court judges, of course, are best positioned to make that determination on a case-by-case basis. Today, we answer only the question of whether § 1292(c)(2) grants this court jurisdiction over appeals where the district court has exercised its discretion to bifurcate the issues of damages and willfulness from those of liability.
Conclusion
For the reasons outlined above, this court answers each en banc question in the affirmative. We find that 28 U.S.C. § 1292(c)(2) does confer jurisdiction on this court to entertain appeals from patent infringement liability determinations when a trial on damages has not yet occurred. We also find that 28 U.S.C. § 1292(c)(2) confers jurisdiction on this court to entertain appeals from patent infringement liability determinations when willfulness issues are outstanding and remain undecided. Accordingly, we return this case to the panel for disposition on the merits.

. An infringer’s profits are, of course, no longer an available remedy for the infringement of a utility patent. See 35 U.S.C. § 284. Such profits, however, remain available in cases of design patent infringement. ■See 35 U.S.C. § 289.

. This is not to say that accountings before special masters disappeared. Special masters continued to hold "accountings” following Congress’s elimination of the traditional equitable accounting. See Gen. Motors, 461 U.S. at 650-51, 103 S.Ct. 2058. However, these accountings no longer bore any resemblance to the traditional equitable accounting of an infringer’s profits, but rather included the determination of damages such as a reasonable royalty.

. This conclusion is well-aligned with the holdings of several regional courts of appeals, which, following the merger of law and equity, were faced with the question of whether despite having pled for an accounting in a patent case, a plaintiff was entitled to a jury trial under the Seventh Amendment. See Kennedy v. Lakso Co., 414 F.2d 1249, 1253 (3d Cir.1969) ("While it is true that equity traditionally has had jurisdiction in actions for an accounting, it has always been recognized that there may be a suit for accounting at law and indeed the essential ingredient of equity’s jurisdiction has been the complicated nature of the accounting .... There is nothing on the present record to indicate that the accounting between the parties in the determination of profits or damages will be so complicated as to be beyond the power of a jury to determine.”); AMF Tuboscope, Inc. v. Cunningham, 352 F.2d 150 (10th Cir.1965) (holding jury trial available where complaint in patent infringement case sought an injunction and an "accounting for damages” or treble damages); Swofford v. B & W, Inc., 336 F.2d 406, 409-11 (5th Cir.1964) (jury trial held available in patent infringement case where requested relief included an accounting for damages).

.Prior to the Patent Act of 1952, R.S. § 4919 provided a remedy at law for damages for patent infringement, while R.S. § 4921 provided for equitable remedies including damages. By the Patent Act of 1952, the former provisions of R.S. 4919 and 4921 relating to damages were combined in § 284. See the Reviser’s Note reproduced in 35 U.S.C.A. following § 284.